FILED
United States Court of Appeals
Tenth Circuit

November 1, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 10-3087

CLINTON A.D. KNIGHT,

Defendant-Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 07-CR-10143-03-JTM)**

---

Howard Pincus, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Office of the United States Attorney, Topeka, Kansas, for Appellee.

---

Before **MURPHY**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Clinton Knight was convicted on charges of racketeering and drug possession arising from his membership in a Wichita, Kansas street gang. He

argues the district court plainly erred by (1) improperly instructing the jury on the pattern of racketeering element under the Racketeer Influenced and Corrupt Organizations Act (RICO); and (2) failing to provide a jury instruction for constructive possession on the drug possession charges. We conclude the district court did not plainly err in its instructions to the jury.

Exercising jurisdiction under 28 U.S.C. § 1291, we therefore AFFIRM Knight's conviction.

## I. Background

Knight was a leader of a neighborhood group of the Crips, a large street gang in Wichita. The gang leaders, including Knight, provided crack cocaine and marijuana for younger gang members to sell. As part of the drug operation, Knight and another gang leader maintained a house where Crips sold drugs. Knight's co-conspirator owned the house and rented it to different gang members; Knight occasionally distributed drugs to other Crips at the house. In 2004, Wichita police officers searched the house and discovered 14 grams of crack cocaine. A young gang member who was in the house when the police arrived testified that the cocaine was the remnants of an ounce of crack he had purchased from Knight.

A week after searching this first house, Wichita police searched a second drug house maintained by Knight and two other gang leaders. This house was used by fellow Crips to cook and sell drugs. Knight was accused of providing

drugs to younger gang members for resale out of the premises. In connection with the search, police discovered cocaine, marijuana, beakers, scales, and ammunition. They also discovered an address label for the house with Knight's name on it.

The government charged Knight and other gang members in a multi-count indictment, and after trial the jury convicted Knight of (1) racketeering, 18 U.S.C. § 1962(c); (2) conspiracy to participate in a RICO enterprise, *id.* § 1962(d); (3) conspiracy to distribute marijuana, 21 U.S.C. §§ 841(a)(1), 846; (4) possession with intent to distribute 14 grams of cocaine base, *id.* § 841(a)(1); and (5) maintaining the first drug house, *id.* § 856(a)(1). He was acquitted of conspiring to distribute crack cocaine and maintaining the second drug house.

The district court sentenced Knight to 210 months' imprisonment.

## II. Discussion

Knight argues the district court's jury instructions were erroneous. Specifically, he contends the court (1) incorrectly instructed the jury regarding the "pattern of racketeering" element in the racketeering charges and (2) improperly failed to instruct the jury on the definition of "constructive possession."

Because Knight did not object to any of the jury instructions at trial, we review only for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009). Under plain error review, we may not reverse

unless we find "(1) error, (2) that is plain, and (3) that affects substantial rights.

If all three conditions are met, [we] may then exercise [] discretion to notice a

forfeited error, but only if (4) the error seriously affects the fairness, integrity, or

public reputation of [the] judicial proceedings." *United States v. Balderama-*

*Iribe*, 490 F.3d 1199, 1204 (10th Cir. 2007) (quotation omitted). Knight bears the

burden of demonstrating plain error. *Id.*

In assessing the appropriateness of jury instructions, we read and evaluate

them in their entirety. Specifically,

> [w]e assess whether the instructions, examined in light of the
> record as a whole, fairly, adequately, and correctly state the
> governing law and provide the jury with an ample understanding
> of the applicable principles of law and factual issues confronting
> them. The proper inquiry is not whether the instruction could
> have been applied in an unconstitutional manner, but whether
> there is a reasonable likelihood that the jury did so apply it.

*United States v. Jones*, 468 F.3d 704, 710 (10th Cir. 2006) (citations, quotation

marks, and alterations omitted).

With these general principles in mind, we turn to Knight's arguments.

### A.     *Pattern of Racketeering Jury Instruction*

"RICO [is] an aggressive initiative [designed] to supplement old remedies

and develop new methods for fighting crime." *Sedima, S.P.R.L. v. Imrex Co.*, 473

U.S. 479, 498 (1985). Targeting criminal enterprises engaged in repeated illegal

conduct, Congress made it "unlawful for any person employed by or associated

with any enterprise engaged in . . . interstate . . . commerce, to conduct or

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

RICO is a powerful statute but also a confounding one. Because of RICO's broad text and scope, courts have found it challenging to interpret the statute so as to capture racketeers—those who engage in a *pattern* of continued criminal activity—without also subjecting garden-variety fraud or criminal conduct to the statute's severe penal and monetary sanctions. Therefore, given RICO's varied civil and criminal applications, it is important that courts precisely instruct juries as to all elements of a RICO violation.

A racketeering violation has five basic elements. The district court, without objection from Knight, properly instructed the jury that to establish a RICO violation, the government must prove:

> (1) the existence of "an enterprise," (2) which was "engaged in activities affecting interstate or foreign commerce," (3) which the defendant was "associated with or employed by," (4) that he "*knowingly . . . conduct[ed] . . . a pattern of racketeering activity*," and (5) he "knowingly conducted, or participated directly or indirectly in the conduct of, the enterprise through that pattern of racketeering activity."

R., Vol. III at 16 (Jury Instruction 15) (emphasis added).

To flesh out the fourth element—the "pattern of racketeering activity" requirement—the court instructed:

The fourth element that the government must prove . . . is that the defendant engaged in a pattern of racketeering activity.

\* \* \*

To prove that the acts of racketeering are related, the government must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events. *Racketeering acts are related where defendant was enabled to commit the racketeering act solely by virtue of his position in the enterprise or involvement in or control over its affairs, or by evidence that the defendant's position in the enterprise facilitated his commission of the racketeering act, or by evidence that the racketeering act benefitted the enterprise, or by evidence that the racketeering act was authorized by the enterprise or by evidence the racketeering act promoted or furthered the purposes of the enterprise.*

R., Vol. III at 30, 31–32 (Jury Instruction 19) (emphasis added).

Although he did not object at trial, Knight now contends this instruction is plainly erroneous. He argues the district court improperly expanded the definition of "pattern," and in so doing, effectively merged RICO's fourth element ("pattern") with its fifth element ("participation").

The leading Supreme Court case addressing the "enigmatic term" of "pattern of racketeering activity" is *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 250 (1989) (Scalia, J., concurring). In *H.J. Inc.*, the Supreme Court was called on to explain how multiple predicate acts interact with each other, and with the activities of a RICO enterprise, so as to constitute a pattern of illegal activity. After observing Congress "had a fairly flexible concept of a pattern in

mind," the Court found the "term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity," so that it is "*continuity plus relationship* which combines to produce a pattern." *Id.* at 239 (some emphasis and punctuation marks omitted).  A prosecutor "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Id.*  Although the two "constituents of RICO's pattern requirement"—continuity and relatedness—are analytically distinct, "in practice their proof will often overlap." *Id.*

At issue here is the "relatedness" aspect of RICO's pattern requirement. Attempting to offer guidance on RICO relatedness, *H.J. Inc.* arrived at a working definition by borrowing from a parallel statue, the Dangerous Special Offender Sentencing Act (Title X).  Title X—like RICO, a provision of the Organized Crime Control Act of 1970—defines a "pattern" with some specificity:

> [C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.[1]

*Id.* at 240; *see also* 18 U.S.C. § 3575(e).  With this understanding of relatedness, the Court went on to explain that racketeering acts establish a threat of continued racketeering activity if they extend "over a substantial period of time" or "project[] into the future with a threat of repetition."  *H.J. Inc.*, 492 U.S. at 241,

---

[1] *H.J. Inc.* did not clarify what other "distinguishing characteristics" could be used to identify a pattern.

-7-

242.  In other words, RICO acts are continuous if they are attributable to a "long-term association that exists for criminal purposes" or are "part of an ongoing entity's regular way of doing business."  *Id.* at 242, 243.

We have applied these concepts in various circumstances, and we have particularly approved of the language from *H.J. Inc.* and Title X as applied to related racketeering acts.[2]  *See, e.g.*, *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010); *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555 (10th Cir. 1992).  Our Tenth Circuit pattern jury instruction adopts verbatim the language from *H.J. Inc.*  *See* 10th Cir. Crim. Pattern Jury Instructions No. 2.74.5.

Accordingly, instructing the jury using only the *H.J. Inc.* language is the conventional approach, and unsurprisingly, most jurisdictions adopt the *H.J. Inc.* language when explaining what constitutes a pattern of racketeering activity.  *See, e.g.*, *United States v. Brandao*, 539 F.3d 44, 55 (1st Cir. 2008); *Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 524 (5th Cir. 1996); *United States*

---

[2]  At oral argument, and to a limited extent in his briefs, Knight relied on *United States v. Smith*, 413 F.3d 1253 (10th Cir. 2005), *abrogated on other grounds by United States v. Hutchinson*, 573 F.3d 1011 (10th Cir. 2009).  This reliance is misplaced.  Although *Smith* applies the *H.J. Inc.* definition of relatedness, it does not suggest that definition is exclusive.  *Id.* at 1269.  And, although Knight is correct that *Smith* suggests the government must prove, as an independent element, "a nexus . . . between the racketeering activity and the enterprise," this requirement alone does not mean that Knight's Instruction 19 is plainly improper.  *See id.* at 1272.  As the Third Circuit explained in *United States v. Irizarry*, 341 F.3d 273, 286 (3d Cir. 2003), "proof used to establish the existence of an enterprise and a pattern of racketeering activity may in particular cases coalesce," and in any case, Instruction 19 did not eliminate the requirement that the jury find relatedness among predicate racketeering acts.

*v. Bingham*, 653 F.3d 983, 992 (9th Cir. 2011); *see also, e.g.*, David B. Smith & Terrance G. Reed, *Civil RICO* § 4.03 (2011) (identifying the *H.J. Inc.* relatedness formulation as the standard definition).

And, even while accepting the general *H.J. Inc.* framework, some circuits have taken a more expansive view of RICO relatedness. In *United States v. Eppolito*, 543 F.3d 25, 57 (2d Cir. 2008), for example, the Second Circuit applied the *H.J. Inc.* language but acknowledged its "residual clause— 'otherwise . . . interrelated by distinguishing characteristics'—is open to 'a range of different ordering principles.'" Under this language, "[w]here the government presents evidence from which it could permissibly be inferred that the criminal acts have some rational common denominator or fit into a particular order or arrangement, the question of whether the acts are related is one of fact for the jury." *Id.*

Similarly, in *United States v. Irizarry*, 341 F.3d 273, 304 (3d Cir. 2003), the Third Circuit held that the government may establish a pattern of racketeering "by showing either (1) the defendant is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise or (2) the predicate offenses are related to the affairs of the enterprise." Explaining that "proof used to establish the existence of an enterprise and a pattern of racketeering activity may in particular cases coalesce," the court noted that "separately performed, functionally diverse and directly unrelated predicate acts and offenses will form a pattern [of racketeering] under

RICO, as long as they all have been undertaken in furtherance of one or another varied purposes of a common organized criminal enterprise." *Id.* at 286, 292 n.7 (quotations omitted).

Along these lines, in *United States v. Corrado*, 227 F.3d 543, 554 (6th Cir. 2000), the Sixth Circuit held that "[RICO] predicate acts do not necessarily need to be directly interrelated; they must, however, be connected to the affairs and operations of the criminal enterprise." The court observed: "[t]he business of a criminal enterprise is crime [and its] crimes form a pattern defined by the purposes of the enterprise." *Id.* (quotation omitted).

Given the widespread adoption of Title X's language, Knight does not take issue with the first part of Instruction 19, which is taken directly from *H.J. Inc.* But he contends the latter portion of the instruction (italicized in the excerpt above) inappropriately expands the notion of a pattern of racketeering activity. He argues this portion is legally unsupportable because, in deviating from the *H.J. Inc.* framework, the instruction improperly shifts the jury's focus from the *relationship among criminal acts*—an aspect of RICO's fourth element—to how the acts are *related to the affairs of the RICO enterprise*—RICO's fifth element, which was covered in Instruction 21. The upshot, according to Knight, is that the jury could have found a pattern of racketeering without ascertaining any functional relationship among the racketeering acts themselves—a result irreconcilable with the idea of a pattern of criminal behavior.

Knight is correct to point out that Instruction 19's latter portion parallels Instruction 21, which reads:

> The . . . final element that the government must prove . . . is that a defendant . . . conducted or participated in the conduct of the enterprise through th[e] pattern of racketeering activity.
>
>        \*     \*     \*
>
> [T]he government must also prove that there is some meaningful connection between the defendant's illegal acts and the affairs of the enterprise. To satisfy this part of the element, the government must establish either (1) that the defendant's position in the enterprise facilitated his commission of those illegal acts and that the racketeering acts had some impact or effect on the enterprise, or (2) that the acts were in some way related to the affairs of the enterprise, or (3) that the defendant was able to commit the acts by virtue of his position or involvement in the affairs of the enterprise.

R., Vol. III at 34.

These two instructions—designed to address separate RICO elements—contain obvious similarities. Knight says these similarities irreparably tainted his conviction and require reversal.

We disagree. While not without some force, Knight's argument fails under the plain error standard. First, as a whole, the jury instructions did not mislead the jury, and *H.J. Inc.* itself does not preclude courts from issuing additional explanatory language regarding the concept of relatedness. Indeed, neither Supreme Court nor Tenth Circuit law suggests the *H.J. Inc.* definition is the exclusive text for assessing relatedness, or that it was flatly improper for the

district court to include explanatory language regarding a defendant's relationship with the RICO enterprise.

Second, and consistent with the other circuits, although *H.J. Inc.*'s language is not entirely clear, it allows at least some flexibility in describing racketeering patterns. To some extent, the Supreme Court left it to lower courts to define the precise contours of RICO's pattern-of-conduct requirement. As the Court explained: "Congress intended to take a *flexible approach* [to establishing a pattern of racketeering], and envisaged that a pattern might be demonstrated by reference to a range of different ordering principles or relationships between predicates, within the expansive bounds set." *H.J. Inc.*, 492 U.S. at 238 (emphasis added). And when summarizing its reasoning, the Court firmly disavowed any suggestion it was setting forth an unbending test for relatedness: "[T]he precise methods by which relatedness . . . may be proved[] cannot be fixed in advance with such clarity that it will always be apparent whether in a particular case a 'pattern of racketeering activity' exists. The development of these concepts must await future cases, absent a decision by Congress to revisit RICO to provide clearer guidance as to the Act's intended scope." *Id.* at 243. Accordingly, *H.J. Inc.*'s discussion leads to an inescapable conclusion: district courts are free to reasonably flesh out Title X's characterization of patterns of criminal conduct.

Third, a close reading of Instruction 19 reveals that under *H.J. Inc.* and ordinary principles of statutory construction, the district court's approach was not plainly wrong. As an initial matter, Instruction 19—which provides that "[t]o prove that the acts of racketeering are related, the government *must prove*" that acts are related in precisely the manner set out in Title X—reveals the district court expressly required the jury to find relatedness in accordance with the standard set forth in *H.J. Inc.* R., Vol. III at 31 (emphasis added). We assume the jury followed this command. The second part of the instruction does not negate this requirement. Rather, when read in context, it illustrates how Knight might have exploited the RICO enterprise to engage in narcotics trafficking through a pattern of ongoing criminal acts. As it considered Instruction 19, the jury would have already concluded that Knight engaged in criminal activity through the Crips gang—an organized drug conspiracy—and, given that, the jury could have found that the various drug crimes furthered the gang's objectives.

Although it is true that the latter part of Instruction 19 adds content to, and likely expands, Title X's definition of relatedness, its emphasis on the interplay between relatedness and the defendant's participation in the criminal enterprise is not contrary to settled law. And, even though Instructions 19 and 21 are similar, when read in context, they are not sufficiently redundant such that we can only conclude the purported error was plain.

-13-

Finally, as the government points out, the *H.J. Inc.* standard, as recited in Instruction 19, provides that predicate acts may form a pattern of criminal conduct if they "*otherwise are interrelated by distinguishing characteristics*." *H.J. Inc.*, 492 U.S. at 240 (emphasis added); *see also id.* at 238 ("It is not the number of predicates but the relationship that they bear to each other *or to some external organizing principle* that renders [criminal acts] 'ordered' or 'arranged.'" (emphasis added)). No relevant authority suggests the category of "distinguishing characteristics" may not include a significant and ongoing relationship between the defendant, the criminal acts, and the RICO enterprise. The pattern here consists of a series of drug crimes, overseen by Knight and others, that maintained and funded the operation of the gang.

Ultimately, however, detailed analysis of Instruction 19's language is unnecessary. Because neither the Supreme Court nor the Tenth Circuit has mandated a single test to determine whether predicate RICO acts are related—and because multiple circuits have diverged from a narrow view of *H.J. Inc.*—any purported error in the district court's instruction was not plain. *United States v. Story*, 635 F.3d 1241, 1248 (10th Cir. 2011) ("[F]or an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue."); *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) (to show plain error, a defendant must establish that an error, if it occurred, was "clear or obvious under current law"). Indeed, "[w]hen the law is unsettled," as it is here,

"the decision to instruct one way or the other does not constitute plain error." *Davoll v. Webb*, 194 F.3d 1116, 1141 (10th Cir. 1999).

Having said all this, the more prudent course for district courts is to continue to adhere to the Tenth Circuit pattern jury instructions when defining the RICO elements. If a court relies on *H.J. Inc.*'s residual language—"or otherwise interrelated by distinguishing characteristics," 492 U.S. at 240—it should say so expressly, and it should explain carefully how the jury should apply the residual clause to the facts of a particular case.

Although we find no plain error, we also doubt any error would have affected Knight's substantial rights. All conceivable predicate acts—including the marijuana conspiracy and maintaining the first drug house—were related by a common purpose (to earn money through the sale of illegal drugs) and a common method (the sale of drugs to younger gang members for resale). Even a strict reading of *H.J. Inc.* reveals that relatedness can be established solely on the basis of these characteristics.

For these reasons, Knight has not met his burden under the plain error standard.

### B.     *Constructive Possession Instruction*

Knight also contends the district court committed plain error by failing to instruct the jury on the definition of constructive possession. This claim likewise

fails because Knight has not demonstrated any error that was plainly contrary to established law or affected his substantial rights.

Knight's charge for possessing crack cocaine with intent to distribute was based on the discovery of 14 grams of crack cocaine in the first drug house. In Jury Instruction 27, the district court directed the jury to find Knight guilty if (1) he knowingly or intentionally possessed crack cocaine, (2) he possessed the cocaine with intent to distribute, and (3) the weight of the controlled substance was at least the amount charged. The same jury instruction defined possession with intent to distribute as "to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction." R., Vol. III at 38–39. Knight did not ask the court to instruct the jury on constructive possession, and the court never issued such an instruction. A constructive possession instruction, had it been given, would have explained that possession may be actual or constructive, and that "[c]onstructive possession exists where the defendant has the power to exercise control or dominion over the [drugs]." *United States v. Ramirez*, 479 F.3d 1229, 1250 (10th Cir. 2007) (quotations, citation, and alteration omitted). In other words, constructive possession does not require proof of actual physical custody—only the defendant's ability (but not necessarily the sole ability) to guide the destiny of the drugs, which can be exercised by control of or influence over others. Mere proof of joint or common ownership, occupation, or control of the premises is not

enough; the government must also show "some connection or nexus individually linking the defendant to the contraband." *United States v. Lopez*, 372 F.3d 1207, 1212 n.4 (10th Cir. 2004) (quotation omitted).

Knight now contends this omission was plainly erroneous because without a firm definition of constructive possession, the jury was "left . . . to its own devices in deciding what, apart from actual physical custody, amounted to possession" and therefore was free "to convict on a theory that would not suffice to meet the legal test of possession." Aplt. Br. at 49–50. According to Knight, the jury could have found possession on the mere basis that Knight jointly controlled a drug house where drugs were sold—a fact insufficient to support a conviction for possession with intent to distribute. *See United States v. McKissick*, 204 F.3d 1282, 1291 (10th Cir. 2000) (where there is joint occupancy, "mere control or dominion over the place in which the contraband is found is not enough to establish constructive possession").

Even if one accepts the premise of Knight's argument, he has not met his burden under the plain error standard. Although Knight points to several cases in which courts distinguish between actual and constructive possession, he does not identify any case—much less a Tenth Circuit or Supreme Court decision— holding that failure to provide a constructive possession instruction is erroneous. Absent such authority, any claim of error was not plain. *See Story*, 635 F.3d at 1248.

Moreover, Knight's substantial rights were not affected by the alleged error. At trial, a gang member testified unequivocally that Knight personally sold him cocaine—a statement sufficient, without more, to convict on the possession count. That testimony establishes a nexus between Knight and the drugs found at the first drug house. Knight attempts to rebut this testimony, urging us to presume that "the jury could easily have been dubious of [the witness's] account." Aplt. Br. at 56. But we cannot reassess credibility on plain error review.

Accordingly, Knight has not satisfied the second and third prongs of plain error review.[3]

### III. Conclusion

We AFFIRM Knight's conviction.

---

[3] Because we find that Instruction 27 was not plainly erroneous, we need not consider Knight's contention that failure to provide a constructive possession instruction invalidated his RICO convictions.