PAUL KELLY, JR., Circuit Judge.
Defendants-Appellants Dr. Stephen and Linda Schneider (the Schneiders) were convicted of several counts of unlawful drug distribution, health care fraud, and money laundering, all arising from their operation of Schneider Medical Clinic. The district court sentenced Dr. Schneider to 360 months’ imprisonment, and Ms. Schneider to 396 months’ imprisonment. The Schneiders appeal their convictions, alleging that (1) they were denied the right to conflict-free representation; (2) the district court erroneously admitted expert testimony; (3) the district court improperly instructed the jury; and (4) there was insufficient evidence to support the charge of health care fraud resulting in death. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Background

This is the second time that the Schneid-ers and their medical clinic come before us on appeal. On the first occasion, we considered, on interlocutory appeal by the government, whether a pre-trial order excluding evidence and limiting the government’s time to present its case was proper. United States v. Schneider, 594 F.3d 1219 (10th Cir.2010). We held that it was not, vacated the district court order, and remanded for trial. Id. at 1221. In the same decision, we dismissed the Schneid-ers’ cross-appeal from the denial of their motion to exclude the government’s expert testimony, finding that we lacked jurisdiction under the collateral order doctrine. Id. at 1229-30. The Schneiders now appeal their convictions. As before, we begin with the relevant facts.
Dr. Schneider was a doctor of osteopathic medicine and his wife, Ms. Schneider, was a licensed practical nurse. IV R. 104. They owned and operated Schneider Medical Clinic in Haysville, Kansas, where they provided pain management treatment including the prescription of controlled substances. Id. at 104-05. On May 3, 2010, a Kansas grand jury issued a third superseding indictment charging: Count 1— conspiracy to unlawfully distribute drugs, commit health care fraud, engage in money laundering, and defraud the United States in violation of 18 U.S.C. § 371; Counts 2-6—unlawful drug distribution and unlawful drug distribution resulting in death in violation of 21 U.S.C. § 841(a)(1); Counts 7-17—health care fraud and health care fraud resulting in death in violation of 18 U.S.C. § 1347; and Counts 18-34— money laundering in violation of 18 U.S.C. § 1957. Id. at 104-72.
By the time of the third indictment, much had already happened in the case, especially with respect to the Schneiders’ trial counsel. The Schneiders, after befriending Siobhan Reynolds, a leader of the Pain Relief Network (PRN), fired their court-appointed counsel and hired new counsel that Ms. Reynolds suggested. VIII R. 104. Dr. and Ms. Schneider had separate counsel, but their attorneys were in communication with Ms. Reynolds. See id. at 181, 235-36. Moreover, while repre *1291 senting Dr. and Ms. Schneider, this counsel, on behalf of the PRN, sought temporary restraining orders prohibiting the Kansas Board of Healing Arts from suspending Dr. Schneider’s medical license. Id. at 106-07. This same counsel also filed a lawsuit in the Eastern District of Washington challenging state rules restricting access to pain medicines. Id. at 263-73.
Aware of a potential conflict, the government moved for a determination of conflict. Id. at 143. On March 14, 2008, then presiding Judge Brown held a hearing on the motion. Id. at 142-43. Judge Brown stated the government’s concerns, and defense counsel represented that there was no conflict. Id. at 144-64. Then, after conferring with counsel, Dr. and Ms. Schneider waived all potential conflicts. Id. In November 2009, the government renewed its motion for a determination of a conflict. Id. at 99. Judge Belot, who presided at trial, conducted ex parte hearings for Dr. and Ms. Schneider on January 11, 2010. XV R. 160-68, 173-86. At each hearing, Judge Belot questioned the Schneiders about the potential conflicts. Id. Both stated that they were aware of no conflict and waived all potential conflicts. Id. at 168,185.
During Spring 2010, the case proceeded to trial. The government presented an extensive amount of evidence detailing the operations of Schneider Medical Clinic. This included lay testimony from patients and former employees, along with expert testimony from medical experts. On appeal, the Schneiders challenge portions of this expert testimony. Aplt. Stephen (S.) Br. 17-32. Thus, we describe this expert testimony in more detail.
At trial, Dr. Theodore Parran was the government’s expert on the patient care at Schneider Medical Clinic. XIII R. 2957. Dr. Parran reviewed over 100 patient records. Id. From those records, Dr. Parran concluded that the Schneiders violated Kansas standards for prescribing controlled substances. Id. at 3002-03. According to Dr. Parran, the Schneiders: (1) ran a practice that attracted drug addicts; (2) took inadequate medical histories; and (3) indiscriminately prescribed controlled drugs in excessive and escalating amounts. Id. at 3003, 3008, 3028. On cross-examination, defense counsel questioned Dr. Par-ran about how the clinic operated. Id. at 3473-76. The government, on redirect, asked Dr. Parran additional questions regarding operations of the clinic, to which he replied that “the clinic was at fault” for illegal drug distribution. Id. at 3527. Dr. Parran also testified that, from his review of the records, the Schneiders ran a “dishonest practice.” Id. at 2982-83. The Schneiders object to this testimony.
Dr. Douglas Jorgensen was the government’s expert on pain management and billing practices at Schneider Medical Clinic. XIV R. 404. Dr. Jorgensen reviewed fifty-four medical charts, numerous autopsy and toxicology reports, and information about billing and coding practices. Id. As part of his extensive testimony on his observations from these documents, Dr. Jor-gensen summarily opined that the Schneiders’ health care fraud resulted in patients’ deaths. See, e.g., id. at 520, 526. Dr. Jorgensen also testified that he believed, again from his review of the records, that the Schneiders filed fraudulent claims. Id. at 519. The Schneiders object to this testimony.
Dr. Graves Thorne Owen also testified as an expert in pain management. XIII R. 2785, 2788. The government asked Dr. Owen, from a review of the medical records, whether Dr. Schneider “was prescribing controlled substances for a legitimate medical purpose?” Id. at 2809, 2819. Dr. Owen answered that “[i]t was not.” Id. The Schneiders object to this testimo *1292 ny, along with similar testimony from Drs. Parran and Jorgensen.
After a lengthy trial, the jury found Dr. Schneider guilty of Counts 1-17 and two money laundering charges (Counts 26 and 28), and found Ms. Schneider guilty of all charges save two money laundering charges (Counts 23 and 24). The court sentenced Dr. Schneider to 360 months’ imprisonment, and Ms. Schneider to 396 months’ imprisonment. The Schneiders timely appealed, filing separate briefs but incorporating by reference the arguments made in each other’s briefs. See Fed. R.App. P. 28(i); Aplt. S. Br. 9; Aplt. Linda (L.) Br. 75. Ms. Schneider, however, does not join Dr. Schneider’s challenge to Instruction 33. Statement Joining Co-Def.’s Br. and Notice of Errata, Sept. 4, 2012.

Discussion

A. Right to Conflict-Free Representation
The Schneiders first argue that they were denied the right to conflict-free representation. Aplt. L. Br. 36. They allege that the district court’s advice of the potential conflict and their subsequent waivers were inadequate. Id. They contend that this is a conflict-of-interest claim, not a deficient-performance claim, and thus, this court should apply the adverse-effects test of Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), not the prejudice test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Aplt. L. Br. 57. Under Cuyler, a defendant need only prove an actual conflict of interest that adversely affected counsel’s performance. 446 U.S. at 350, 100 S.Ct. 1708. The government disagrees, arguing that (1) the Schneiders waived the right to conflict-free representation, and (2) this is a garden-variety, ineffective assistance of counsel claim best reviewed in a collateral proceeding under Strickland. Aplee. L. Br. 22-23.
We agree with the government that the Schneiders waived the right to conflict-free representation. The Sixth Amendment right to counsel contemplates the right to conflict-free representation. See Holloway v. Arkansas, 435 U.S. 475, 483-84, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). However, a defendant may waive this right, if it is done voluntarily, knowingly, and intelligently. Estelle v. Smith, 451 U.S. 454, 471 n. 16, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). The trial court must ensure that a defendant understands the nature of any conflict and its potential effect on counsel’s representation. See Wheat v. United States, 486 U.S. 153, 161, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). We have held that
in order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel.
United States v. Migliaccio, 34 F.3d 1517, 1527 (10th Cir.1994) (quotation omitted). Moreover, when determining if a waiver is valid, we consider the “totality of the circumstances,” including all prior discussions of any conflict. Id.
Here, the record shows that the Schneiders, two medical professionals, waived their right to conflict-free representation. Prior to trial, the court conducted two hearings on potential conflicts. At the first hearing, Judge Brown stated the government’s concerns, counsel represented that there was no conflict, and then, after given the opportunity to confer with counsel, the Schneiders waived all potential conflicts. VIII R. 144-64. At the second hearing, which was conducted ex *1293 parte and separately for Dr. and Ms. Schneider, Judge Belot again questioned the Schneiders about the potential conflict. XV R. 160-68, 173-86. Both stated they were aware of no conflict and waived all potential conflicts. Id. at 168, 185. Considering the “totality of the circumstances,” Migliaccio, 34 F.3d at 1527, we have no doubt that the waivers were valid.
We also agree with the government that any remaining claim is best brought in a collateral proceeding. We have long explained that “ineffective assistance of counsel claims are more appropriate for collateral attack under 28 U.S.C. § 2255 than direct appeal, because the factual record for such claims is more developed when the district court conducts an evidentiary hearing on the issue.” United States v. Bergman, 599 F.3d 1142, 1149 (10th Cir.2010) (citation omitted). Here, further development of the record is required. Thus, any ineffective assistance claim should be brought in a collateral proceeding.
Finally, we note that Dr. and Ms. Schneider criticize the government for taking inconsistent positions on the issue of conflict. The Schneiders even suggest that judicial estoppel is appropriate because the government, at trial, argued there was a conflict, and now, on appeal, denies the existence of a conflict. Aplt. L.R. Br. 1-6; Aplt. S.R. Br. 5-8. We reject this suggestion, and remind the Schneiders that the government has a “duty to alert the court to defense counsel’s potential and actual conflicts of interest.” United States v. McKeighan, 685 F.3d 956, 966 (10th Cir.2012) (emphasis added). This responsibility, however, does not prevent the government from later denying the existence of a conflict.
B. Expert Witness Testimony
The Schneiders next contend that the district court improperly allowed expert witnesses to testify (1) that Dr. Schneider was guilty of the crimes charged; (2) as to legal opinions; and (3) about Dr. Schneider’s state of mind. Aplt. S. Br. 17. We review a district court’s admission of expert testimony for abuse of discretion, United States v. Shaffer, 472 F.3d 1219, 1225 (10th Cir.2007), and will only reverse when that decision is “manifestly erroneous.” United States v. Dazey, 403 F.3d 1147, 1171 (10th Cir.2005). When a claim is not preserved, we review for plain error. United States v. Knight, 659 F.3d 1285, 1287 (10th Cir.2011). Under plain error review, we may not reverse unless we find an (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.
The Schneiders first allege the court erred by admitting testimony that Dr. Schneider was guilty of unlawful drug distribution in violation of 21 U.S.C. § 841 and health care fraud in violation of 18 U.S.C. § 1347. Aplt. S. Br. 20-22. Specifically, the Schneiders argue that it was improper for Dr. Parran to opine that “the clinic was at fault” for illegal drug distribution, and for Dr. Jorgensen to opine that Dr. Schneider “engaged in health care fraud” resulting in death. Id. at 20-21. The Schneiders did not object to Dr. Jor-gensen’s testimony, so we review that claim for plain error.
The rules of evidence allow an expert to opine on an “ultimate issue” to be decided by the trier of fact. Fed. R.Evid. 704(a); Dazey, 403 F.3d at 1171. However, an expert may not “simply tell the jury what result it should reach[;]” he or she must explain the basis for any summary opinion. Dazey, 403 F.3d at 1171. Here, we find no error in the admission of Drs. Parran and Jorgensen’s testimony. Neither doctor told the jury to *1294 reach a particular verdict, i.e. that Dr. Schneider was guilty. Rather, after explaining at great length their observations from the evidence, they summarized their findings in the testimony above. XIII R. 2945-3320; XIV R. 395-550. As such, the testimony was properly admitted.
The Schneiders next argue that expert witnesses impermissibly offered legal conclusions that Dr. Schneider engaged in conduct outside the ordinary course of medical practice. Aplt. S. Br. 23-28. Here, the Schneiders cite the testimony of Drs. Owens, Jorgensen, and Parran, each opining that Dr. Schneider prescribed controlled substances “for other than legitimate medical purposes.” Id. at 23-26. The Schneiders moved in limine to exclude this testimony, and the judge denied the motion; thus, we review for abuse of discretion. See United States v. Mejia-Alarcon, 995 F.2d 982, 986 (10th Cir.1993).
The crux of the Schneiders’ argument is that the experts should not have used a legal phrase—other than legitimate medical purposes—in their testimony. However, we allow experts to refer “to the law in expressing [their] opinion.” United States v. Bedford, 536 F.3d 1148, 1158 (10th Cir.2008) (internal quotation marks and citation omitted). The concern, rather, is when an expert uses a specialized legal term and usurps the jury’s function. The use of the phrase “other than legitimate medical purposes” does not cause such a problem. See United States v. Mclver, 470 F.3d 550, 562 (4th Cir.2006). The Schneiders’ effort to distinguish the permissible testimony in Mclver from what occurred here is not persuasive. Therefore, the admission of the testimony was proper.
The Schneiders finally argue that the experts impermissibly testified to Dr. Schneider’s intent. Aplt. S. Br. 28. Here, the Schneiders cite testimony from Dr. Jorgensen that the documents evidence “an intention to deceive and defraud the system,” and from Dr. Parran that “this is a dishonest practice.” Id. at 29. The Schneiders did not object at trial, so we review for plain error.
The evidence rules prohibit an “expert witness ... [from] stat[ing] an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.” Fed.R.Evid. 704(b); see Shaffer, 472 F.3d at 1225. However, the rules do not prevent an expert from drawing conclusions about intent, so long as the expert does not profess to know a defendant’s intent. See United States v. Orr, 68 F.3d 1247, 1252 (10th Cir.1995). In this case, the expert witnesses expressly disclaimed knowledge of Dr. Schneider’s intent. See, e.g., XIV R. 533-34 (“Q: Are you telling the jury what you know to be the Defendant’s intent or are you stating what the evidence indicates to you? A: I’m stating what the evidence indicates to me....”). Thus, we find no error in the admission of this testimony.
C. Erroneous Jury Instructions
The Schneiders next contend that the trial court, in charging the jury, erred in four ways. First, they contend that the court should have instructed that, to convict under 21 U.S.C. § 841(a)(1), the jury had to find that Dr. Schneider knowingly acted without a legitimate medical purpose or outside the usual course of professional practice. Aplt. S. Br. 32. Second, they claim that it was error to include the phrase “beyond the bounds of medical practice” in the drug distribution instruction. Id. at 41-42. Third, they contend that the good faith instruction was erroneous because it prevented the jury from finding Dr. Schneider acted in good faith. Id. at 45. And fourth, they argue that the health care fraud instruction was errone *1295 ous because it allowed Dr.- Schneider to be convicted if Ms. Schneider was found guilty. Id. at 53.
We review a court’s rejection of a proposed jury instruction for abuse of direction, considering de novo the instructions as a whole to determine whether they accurately inform the jury of the governing law. United States v. Gwathney, 465 F.3d 1133, 1142 (10th Cir.2006). When a party does not object, we review for plain error. United States v. Teague, 443 F.3d 1310, 1314 (10th Cir.2006). The Schneid-ers objected to the court’s refusal to give its proposed instruction under § 841(a)(1), but did not object to the other instructions.
The Schneiders first challenge the unlawful drug distribution instruction, stating that the court should have instructed the jury that the government must prove Dr. Schneider knowingly and intentionally acted either not for a legitimate medical purpose or outside the usual course of his professional practice. Aplt. S. Br. 34. The instruction, as given, provided that the jury must find:
First: Stephen Schneider dispensed [controlled substances] ...;
Second: Stephen Schneider acted knowingly and intentionally; and
Third: Stephen Schneider’s actions were not for legitimate medical purposes in the usual course of professional medical practice or were beyond the bounds of medical practice.
IV R. 839. The court also provided a good faith instruction that:
[A] physician does not violate Section 841(a)(1) ... when he dispenses a controlled substance in good faith to a patient in the usual course of professional practice.
The term “good faith” means the honest exercise of good professional judgment as to a patient’s medical needs.
IV R. 845. In support, the Schneiders cite United States v. Feingold, where the Ninth Circuit held that, to convict under § 841(a)(1), a “jury must make a finding of intent not merely with respect to distribution, but also with respect to the doctor’s intent to act as a pusher rather than a medical professional.” 454 F.3d 1001, 1008 (9th Cir.2006). However, Feingold provides little support because the instructions in Feingold were nearly identical to those in the instant case, and the court in Feingold held that the instructions “compelled the jury to consider whether [the defendant] intended to distribute the controlled substances for a legitimate medical purpose and whether he intended to act within the usual course of professional practice.” 454 F.3d at 1009. We think the same is true here—the jury considered Dr. Schneider’s intent. In other words, Dr. Schneider’s argument is without merit because the jury, on the instructions given, found that he knowingly acted not for a legitimate medical purpose or not within the usual course of professional practice. See IV R. 839, 845. In reaching this conclusion, we need not decide any mens rea requirement under § 841(a)(1); we only hold that the Schneiders’ challenge is without merit.
On the Schneiders’ second claim concerning the jury instructions, we do not believe that the inclusion of the phrase “beyond the bounds of medical practice” was plain error. Counts 2-6 charged unlawful drug distribution in violation of § 841(a)(1). IV R. 835. Instructions 20-23 and 26 provided that to find Dr. Schneider guilty the jury needed to find that his actions “were not for legitimate medical purposes in the usual course of professional medical practice or were beyond the bounds of medical practice.” Id. at 838-41, 844. As an initial matter, we reject the Schneiders’ claim that there is no precedential support for the phrase *1296 “beyond the bounds of medical practice.” See United States v. Moore, 423 U.S. 122, 140, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975) (discussing physicians who “operate beyond the bounds of professional practice”). More directly, we find no practical difference between “not ... in the usual course of professional medical practice” and “beyond the bounds of medical practice.” Finally, if there were a difference, overwhelming evidence proved that Dr. Schneider unlawfully prescribed controlled substances. Thus, the inclusion of the phrase “beyond the bounds of medical practice” did not affect the Schneiders’ substantial rights.
We similarly find no error in the court’s good faith instruction. Instruction 27 provided that “a physician does not violate Section 841(a)(1) ... when he dispenses a controlled substance in good faith to a patient in the usual course of professional practice.” IV R. 845. The Schneiders contest the phrase “in the usual course of professional practice,” arguing that a jury could only find Dr. Schneider acted in good faith if they first found his actions to be in the usual course of professional practice. Aplt. S. Br. 47. This reading, however, parses the instruction too finely. Instruction 27 later defines “good faith” as “the honest exercise of good professional judgment.” IV R. 845. Thus, the jury could have decided that Dr. Schneider acted in “good faith.”
Finally, we find no error in the court’s health care fraud instruction. Instruction 33 provided that “[t]o find one or both of the defendants guilty of health care fraud [you must find] a defendant knowingly and willfully executed ... a scheme or artifice to defraud a health care benefit program.” Id. at 852. Dr. Schneider argues that this instruction permitted the jury to convict him on a strict liability theory—i.e. if Ms. Schneider (a defendant) executed a health care fraud, Dr. Schneider (one or both, of the defendants) would be guilty as well. Aplt. Br. S. 56. We reject this claim, noting that even if this instruction could have been better worded, the instructions, when considered as a whole, correctly informed the jury that they needed to consider intent and guilt separately. See IV R. 820. Moreover, the jury completed separate verdict sheets for Dr. and Ms. Schneider and convicted them of different offenses. See id. at 770-83. We do not believe this instruction was erroneous.
D. 18 U.S.C. § 181p7: Counts 7-9
Our review is de novo as to the sufficiency of the evidence. United States v. Smith, 641 F.3d 1200, 1204 (10th Cir.2011). “We view the evidence in the light most favorable to the verdict to ascertain whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.” Id. at 1204-05.
Section 1347(a) provides an enhanced penalty for health care fraud “if the violation results in death.” 18 U.S.C. § 1347(a). Counts 7-9 charged the Schneiders with health care fraud resulting in death. IV R. 851. The Schneiders assert that the government presented insufficient evidence to support the jury’s verdict. Aplt. S. Br. 52-53. Specifically, the Schneiders argue that the fraud perpetuated against insurers—i.e. upcoding services or billing for services not rendered—was not the cause of harm to any patients. The government responds that the evidence presented was similar to that upheld as sufficient in other circuits. Aplee. S. Br. 60; see United States v. Webb, 655 F.3d 1238, 1258 (11th Cir.2011); United States v. Martinez, 588 F.3d 301, 319-23 (6th Cir.2009).
Sufficient evidence supports the convictions on these counts. As the government explained at oral argument, evidence of the scheme to defraud was not *1297 limited to the upcoding and billing practices. Rather, the scheme included the illegal distribution of drugs, which caused the deaths of three patients—Patty, Eric, and Robin. The expert testimony and medical records produced at trial showed that Dr. Schneider continued to prescribe controlled substances to Patty, Eric, and Robin even as their conditions worsened. See XIV R. 514-36. And Dr. Schneider, with the help of Ms. Schneider, submitted false and fraudulent claims to the insurers for these services. See id. These claims were false and fraudulent because they were not for legitimate medical services rendered. See id. at 517. A reasonable factfinder could conclude beyond a reasonable doubt that Dr. and Ms. Schneider’s health care fraud scheme resulted in the deaths of Patty, Eric, and Robin. Thus, we find the evidence sufficient to sustain the conviction and enhancement under § 1347.
AFFIRMED. Appellee’s motion to supplement the record on appeal is DENIED.