FILED
United States Court of Appeals
Tenth Circuit

February 15, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MIA COY CAMPBELL,

    Defendant - Appellant.

No. 18-2033
(D.C. No. 5:15-CR-03947-RB-1)
(D. New Mexico)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BACHARACH**, and **McHUGH**, Circuit Judges.
_____

A jury convicted Mia Coy Campbell of felony possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), after police seized a revolver from the backyard of his residence. On appeal, Mr. Campbell argued the trial court had plainly erred in instructing the jury on constructive possession by failing to inform the jury that it could convict only after finding Mr. Campbell intended to exercise dominion or

_____

[*]After examining the briefs and appellate record, this panel determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

control over the revolver. We affirm the district court's ruling that the erroneous jury instruction did not amount to reversible plain error.

## I.    BACKGROUND

### A.    *Factual Background*

In 2015, a team of Pecos Valley Drug Task Force ("PVDTF") officers executed an arrest warrant on Mr. Campbell. Officer Jorge Martinez located Mr. Campbell in the backyard of his residence, ten to fifteen feet away from a partially disassembled go-cart. Officer Martinez ordered Mr. Campbell to the ground, Mr. Campbell complied, and Officer Martinez effectuated the arrest. In doing so, Officer Martinez observed that Mr. Campbell's hands were "greasy" as if "he was working on a car." Suppl. ROA, Vol. 3 at 120–21. Officer Martinez also found a package of Marlboro Red cigarettes while conducting a pat-down search of Mr. Campbell's person.

Meanwhile, other officers performed a protective sweep of the backyard and the residence. In the course of that sweep, Officer David Whitzel observed a smoldering Marlboro Red cigarette near the go-cart. Also near the go-cart and cigarette was a partially-open bag Officer Whitzel described as a "cloth-like toolbox." *Id.* at 144–45. When Officer Whitzel bent down to take a closer look at the cigarette, he saw the butt end of a revolver in the bag. He retrieved the revolver from the bag, which also contained various tools, and determined the gun was loaded. Aware that Mr. Campbell was a convicted felon, officers then obtained a warrant to search the premises.

2

A more thorough search of the area around the go-cart revealed (1) a container of nuts and bolts under an axle of the go-cart, and (2) several sockets and tools on the ground behind the rear of the go-cart. An officer who observed the go-cart described it as "disassembled." *Id.* at 177. It further appeared that a coat of paint had recently been applied to the go-cart, and a search of a trash can revealed an empty bottle of spray paint, with drippings on the bottle's lid. Finally, from the right rear tire of the go-cart, officers recovered a cellphone, which was powered on.

A search of the residence revealed two relevant pieces of evidence. First, between the cushions of a couch, officers discovered an empty holster, sized appropriately for the revolver found in the tool bag. Second, officers found several legal documents bearing Mr. Campbell's name, including Mr. Campbell's birth certificate. While officers performed this search, Mr. Campbell's girlfriend arrived at the residence. Other than the girlfriend and Mr. Campbell, officers did not observe anyone in the residence or on the property. Nor did officers observe anyone fleeing the property when they surrounded the front of the residence prior to Mr. Campbell's arrest.

While inspecting the area outside the residence, officers noticed a Jeep with its hood popped open. It did not appear to the officers that anyone had been working on the Jeep that morning. And a photo taken two days before Mr. Campbell's arrest also showed the Jeep with its hood open at 2:00 a.m., suggesting the open hood did not necessarily indicate someone was currently working on the car. Instead, based on their observations and the evidence collected, PVDTF officers concluded

3

Mr. Campbell had been working on the go-cart prior to his arrest, even though none of them actually observed Mr. Campbell doing so.

## B. *Procedural Background*

The government charged Mr. Campbell as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Prior to trial, both parties submitted proposed jury instructions. Mr. Campbell proposed the following instruction on actual and constructive possession, modeled after Tenth Circuit Criminal Pattern Jury Instruction § 1.31 (2011):

> The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over an object or thing, at a given time, is then in actual possession of it.
>
> A person who, although not in actual possession, knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it.
>
> In the situation where the object is found in a place (such as a room or car) occupied by more than one person, you may not infer control over the object based solely on joint occupancy. Mere control over the place in which the object is found is not sufficient to establish constructive possession. Instead, in this situation, the government must prove some connection between the particular defendant and the object.
>
> In addition, momentary or transitory control of an object is not possession. You should not find that the defendant possessed the object if he possessed it only momentarily, or did not know that he possessed it.

The district court issued Mr. Campbell's proposed instruction on actual and constructive possession to the jury, and the jury convicted Mr. Campbell of felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

4

After Mr. Campbell's trial, this court decided *United States v. Little*, 829 F.3d 1177 (10th Cir. 2016), relying on *Henderson v. United States*, 135 S. Ct. 1780 (2015), and holding the government must prove intent to exercise dominion or control over a firearm to establish constructive possession for purposes of § 922(g)(1). *Little*, 829 F.3d at 1182. Based on *Little*, Mr. Campbell moved for a new trial, arguing his jury had not been properly instructed on constructive possession and that this error satisfied the plain-error standard. In response, the government admitted the error but argued it was not plain at the time of Mr. Campbell's trial because "*Little* overruled well-settled Tenth Circuit law and repudiated the widely used Tenth Circuit Pattern Jury Instruction § 1.31 (2011)." Suppl. ROA, Vol. 1 at 176. The government also contended *Little* had relied on "dicta" from *Henderson* and stated that "the Supreme Court's opinion in *Henderson* did not constitute a clear marker that the law of constructive possession had changed in the Tenth Circuit." *Id.* at 178.

The district court denied Mr. Campbell's motion for a new trial. The court concluded that although Mr. Campbell had satisfied the first two prongs of the plain-error standard, he could not satisfy the third and fourth prongs—requiring a showing that the error "affects his substantial rights" and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 221. The district court reasoned that where the trial record "overwhelmingly demonstrates that [Mr. Campbell] constructively, if not actually, possessed the firearm" the instruction could not "rise to the level of harmful error." *Id.* at 220. Mr. Campbell timely appealed.

5

## II. DISCUSSION

On appeal, Mr. Campbell contends the district court erred in finding harmless the court's failure to issue a *Little*- and *Henderson*-compliant instruction on the intent element of constructive possession. We disagree.

As a preliminary matter, the government argues on appeal that Mr. Campbell waived review of this issue by proposing the very instruction on actual and constructive possession that he now challenges as erroneous.[1] *See United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005) ("The invited-error doctrine prevents a party who induces an erroneous ruling from being able to have it set aside on

---

[1] The government's stance on this issue took a drastic turn between Mr. Campbell's post-trial motion and this appeal. As discussed above, in its response to Mr. Campbell's motion for a new trial, the government argued that *Little*, not *Henderson*, changed the law on constructive possession. Therefore, the government continued, Mr. Campbell (who was tried after *Henderson* but before *Little*) could not establish that any error in his instructions was plain at the time of trial. Now, on appeal, the government reverses course, arguing that *Henderson* changed the law, and thus the instruction on actual and constructive possession that Mr. Campbell urged the district court to adopt "did not comport with settled law" at the time. Gov't. Br. at 9, 11.

Several opinions of this court, including the opinion in *United States v. Simpson*, would have supported the government in its original position. *See Simpson*, 845 F.3d 1039, 1060 (10th Cir. 2017) ("[T]he law changed when our court [in *Little*] held that constrictive possession contains an additional element: intent."). Because the defendant in *Simpson* was tried and convicted before the opinions in both *Henderson* and *Little*, however, the court in *Simpson* had no reason to decide which case had changed the law. Therefore, any such statements in *Simpson* were dicta. *See Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir.1995) (defining dicta as "statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand" (quoting *Dicta*, Black's Law Dictionary 454 (6th ed. 1990)).

appeal." (internal quotation marks omitted)); *United States v. Jereb*, 882 F.3d 1325, 1339 (10th Cir. 2018) (finding invited error where defendant "meaningfully participated in crafting the jury instruction actually given at trial, which reflected the language [he] sought"). But we need not resolve this case on invited error, because even assuming Mr. Campbell did not invite the error in his jury instructions, he has not met the requirements for establishing plain error.

We review Mr. Campbell's claim for plain error because he did not object to the jury instruction on actual or constructive possession at trial. *See United States v. Knight*, 659 F.3d 1285, 1287 (10th Cir. 2011). To meet the plain error standard, Mr. Campbell must establish (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quotation marks omitted). "[A]ll four requirements must be met," and "the failure of any one will foreclose relief and the others need not be addressed." *United States v. Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012). For the reasons explained below, we conclude Mr. Campbell has not shown that the error in his jury instructions "affect[ed] [his] substantial rights" and therefore he cannot succeed on plain-error review. *Knight*, 659 F.3d at 1287 (quotation marks omitted).

Under the third prong of the plain-error test, Mr. Campbell must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *United States v. Benford*, 875 F.3d 1007, 1017 (10th Cir. 2017) (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)). The burden on the defendant under the "reasonable probability standard" is lower than a

7

showing of "a preponderance of the evidence"; a defendant need only demonstrate "a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks omitted).

Mr. Campbell has not carried the burden of showing a reasonable probability that the outcome of his trial would have been different had the jury been properly instructed. Based on the evidence presented at trial, a properly-instructed jury would still have found Mr. Campbell had "the power and intent . . . to exercise dominion or control" over the revolver and that he therefore constructively possessed that revolver. *Little*, 829 F.3d at 1182. Indeed, the record contains overwhelming evidence tying Mr. Campbell to the revolver.

Mr. Campbell's birth certificate and other legal documents bearing his name connected him to the same address where police found the revolver. He was the only individual present at that address when officers executed the arrest warrant. When Officer Martinez first encountered Mr. Campbell, Mr. Campbell was within ten to fifteen feet of the revolver. More importantly, Mr. Campbell's greasy hands and the cellphone on the go-kart's right rear tire strongly supported the conclusion that he had been working on the go-cart that morning. In fact, the still-smoldering cigarette on the ground beside the go-cart established Mr. Campbell's likely proximity to the go-kart and the tool bag containing the revolver only moments before his arrest. And the disassembled state of the go-cart, combined with the partially-open bag and the array of tools under and around the go-cart, established that he had used items from the bag that morning.

The jury also heard testimony that officers located within the residence a holster appropriately sized for the revolver, supporting the inference that Mr. Campbell had removed the revolver from that holster and carried the revolver outside. Finally, the government presented evidence that an August 4, 2015, traffic stop of Mr. Campbell resulted in the recovery of a handgun from a duffel bag that one officer described as a tool bag, which evidence the trial court instructed the jury to consider "as it bears on the defendant's intent, knowledge, or absence of mistake or accident." Suppl. ROA, Vol. 3 at 345.

At trial, Mr. Campbell argued a second person may have been in the backyard just prior to his arrest and that his greasy hands might be attributable to his working on the Jeep rather than the go-cart. It is not apparent how the jury's decision to credit these arguments would have benefited Mr. Campbell, however, because the only tools officers discovered were in the bag containing the revolver and scattered around the go-cart. Thus, even if he had been working on the Jeep, Mr. Campbell must have been using the tools in the tool bag, which also contained the revolver.

To be sure, the government has not provided substantial evidence that Mr. Campbell exclusively possessed the premises where police found the revolver, and thus the government may not rely on that exclusivity to infer Mr. Campbell's intent to control the revolver. *See Little*, 829 F.3d at 1182. But the government has met its "higher burden [of] present[ing] some connection or nexus between the defendant and the firearm." *United States v. Benford*, 875 F.3d 1007, 1019 (10th Cir. 2017). Specifically, the government presented compelling evidence that

9

(1) Mr. Campbell had been working on the go-cart that morning, (2) the tools he used to work on the go-cart had been carried in a nearby bag or "cloth-like toolbox," and (3) the bag also contained a revolver. Considering this compelling evidence, a properly-instructed jury would have concluded Mr. Campbell had intended to exercise control over the bag and its contents, including the revolver.

Accordingly, Mr. Campbell has not shown a reasonable probability that, but for the instructional error, the outcome of his trial would have been different. Because he has not shown that the error "affected his substantial rights," we need not address the other prongs of plain-error analysis.

### III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** Mr. Campbell's conviction and sentence.

Entered for the Court


Carolyn B. McHugh
Circuit Judge