LUCERO, Circuit Judge.
After police discovered stolen weapons in Cody Little’s residence, a jury convicted him of being a felon in possession of a firearm and of possessing a stolen firearm. Little appeals, challenging several jury instructions. We agree with Little that constructive possession requires proof of intent to exercise dominion and control over an object following the Supreme Court’s opinion in Henderson v. United States, — U.S. —, 135 S.Ct. 1780, 191 L.Ed.2d 874 (2015). However, because the evidence presented at trial compels the conclusion that Little intended to exercise control over the weapons, we hold the district court’s error in omitting the intent element from its jury instruction was harmless. Wé further conclude that the district court permissibly issued instructions regarding aiding and abetting and possible guilt of others, and *1180 that a deliberate indifference instruction was harmless. Finally, we hold that the district court erroneously relied on the Sentencing Guidelines’ residual clause in calculating Little’s offense level. Thus, exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), we affirm Little’s convictions but vacate his sentence and remand for resentencing.
I
On the night of October 24, 2011, seven firearms were stolen from Southwest Arms in Lovington, New Mexico. The store owner received an anonymous tip that Little was the burglar. She passed the tip on to investigating authorities. Law enforcement learned that Little was residing on the property of Lacosta Blythe, not far from Southwest Arms.
On November 1, 2011, several law enforcement officials, including Agent Anthony Budrow, visited Blythe’s property. Blythe, her boyfriend, and two minor children lived in a residential trailer on her lot. Little resided nearby in a six-by-eight foot “well house” he rented from Blythe. Several storage sheds were also located on the property.
Upon arriving at the scene, Budrow activated a recording device. The officers spent several minutes speaking to two or three individuals on the porch of Blythe’s trailer. Seven and a half minutes after arriving, Budrow made eye contact with Little as Little was exiting the well house. Two officers pursued Little down a walkway and behind the trailer. Budrow remained at the front of the property and observed that no one else entered or exited the well house. One of the officers who pursued Little escorted him back to the front of the trailer. The other officer stayed behind, where he observed assault rifle hand guards inside of an open shed. Upon seeing the guards, the officers sought a search warrant. They cleared the premises and ensured no one entered any building on the property while they waited for the warrant to issue, although Little indicated he wanted to go back into the well house.
The officers received and executed a warrant later that day. Upon entering the well house, they saw two plainly visible shotgun shells on a shelf below eye level. They also recovered two firearms matching guns stolen in the burglary. One of the weapons — a loaded assault rifle — was found inside a duffel bag under or inside a sleeping bag on a bed. The other weapon— a shotgun — was found under the bed. Officers described the well house as cramped. The bed, which ran almost the entire length of the well house, was the only place to sit.
No other firearms were discovered on the premises. However, officers found a small bag of methamphetamine in the trailer. They agreed that the trailer’s residents would not be charged for possession of the drugs if they cooperated with the officers — particularly by recovering any other stolen firearms. One day after the search, Blythe turned over a third gun found between two sheds on the property. The gun was missing its hand guard, and matched the guard found inside the shed.
Little was indicted for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Following his first trial, the jury deadlocked and a mistrial was declared. The government then filed a superseding indictment adding a count for possession of stolen firearms, §§ 922(j) and 924(a)(2). The superseding indictment also charged aiding and abetting as to both counts. Little again proceeded to trial.
At the second trial, the government presented testimony from several law enforcement officers describing the foregoing search and seizure. Blythe testified that *1181 the last time she had entered the well house was in mid-September 2011, a week after Little moved in. She saw Little access the well house on a daily basis, but never saw anyone else enter. Blythe further testified that Little installed a lock on the well house door about a week before the search — around the time Southwest Arms was burgled — but did not give her a key. However, officers did not recall seeing the lock, and testified that the well house was not locked when they performed their search. Blythe also averred that when she showed Little the police inventory report after the search, he responded, “[t]hey only found two?” The jury also heard a recorded phone call Little placed from jail during which he described another burglary suspect as a “snitch,” and angrily accused him of “snitchfing] me out.”
The jury convicted Little on both counts.[1] The district court calculated a total offense level of 28, based in part on Little’s prior convictions for crimes of violence. It imposed a within-Guidelines sentence of 150 months’ imprisonment. Little timely appealed.
II
We review de novo whether jury instructions, as a whole, correctly state the law and provide the jury with an understanding of the issues. United States v. Wittgenstein, 163 F.3d 1164, 1168 (1998). We will disturb a judgment only if we have “substantial doubt that the jury was fairly guided.” United States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994).
A
Little challenges the instruction on constructive possession. Conviction for possession of a firearm pursuant to § 922 requires proof of “knowing possession.” See United States v. Heckard, 238 F.3d 1222, 1228 (10th Cir. 2001). Such possession may be either actual or constructive. See United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). The district court used the unmodified Tenth Circuit Criminal Pattern Jury Instruction § 1.31 (2011), which provides that constructive possession exists when a person not in actual possession “knowingly has the power at a given time to exercise dominion or control over an object.” Little argues that the court should have instead instructed that constructive possession exists when a person knowingly has the power and the intention to exercise dominion or control.
In United States v. Colonna, 360 F.3d 1169 (10th Cir. 2004), we held that for purposes of constructive possession “[i]t is not necessary to show that the defendant intended to exercise ... dominion or control.” Id. at 1179. We have subsequently reaffirmed that holding. See, e.g., United States v. Jameson, 478 F.3d 1204, 1211 n. 2 (10th Cir. 2007). As we explained in United States v. Ledford, 443 F.3d 702 (10th Cir. 2005), a panel may not overrule Colonna “[ajbsent intervening Supreme Court or en banc authority to the contrary.” Id. at 716.
Little argues that Henderson v. United States, — U.S. —, 135 S.Ct. 1780, 191 L.Ed.2d 874 (2015), provides the intervening Supreme Court authority lacking in Ledford.[2] In Henderson, the Court *1182 held that an individual convicted of being a felon in possession of a firearm may direct the transfer of a seized firearm to a third party, provided that the third party would not grant the individual access to the weapon. 135 S.Ct. at 1784-85. It rejected the government’s argument that allowing such a transfer would place the felon in constructive possession of the weapon. Id. at 1785. Crucially, for our purposes, the Court observed that “[cjonstructive possession is established when a person, though lacking physical custody, still has the power and intent to exercise control over the object.” Id. at 1784 (emphasis added) (citing Black’s Law Dictionary 1047 (5th ed. 1979) and 2A K. O’Malley, J. Grenig, & W. Lee, Federal Jury Practice and Instructions, Criminal § 39.12, p. 55 (6th ed. 2009)). The Court further observed that “the very hallmark of possession” is that a defendant have “broad[ ] command over the gun’s location and use.” Id. at 1785 n. 3.
We agree that Henderson changes the law of constructive possession in our circuit. In Henderson, the Court squarely held that constructive possession requires both power to control an object and intent to exercise that control. Id. at 1784. Because Colonna’s disavowal of an intent requirement is incompatible with the Supreme Court’s decision in Henderson, we overrule that point of law. See United States v. White, 782 F.3d 1118, 1123 n. 2 (10th Cir. 2015) (“Although typically, one panel of this court cannot overrule the judgment of another panel, we may do so if an intervening decision from the Supreme Court invalidates our previous analysis.”). We thus hold that constructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object. Accord Henderson, 135 S.Ct. at 1784.[3]
This holding aligns our circuit not only with Supreme Court precedent but with every other circuit but one that has considered the issue. See United States v. Introcaso, 506 F.3d 260, 270 (3d Cir. 2007); United States v. Bustamante, 493 F.3d 879, 889 (7th Cir. 2007); United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007); United States v. McFarlane, 491 F.3d 53, 59 (1st Cir. 2007); United States v. Gardner, 488 F.3d 700, 713 (6th Cir. 2007); United States v. Jones, 484 F.3d 783, 788 (5th Cir. 2007); United States v. Ruiz, 462 F.3d 1082, 1089-90 (9th Cir. 2006); United States v. Paulino, 445 F.3d 211, 222 (2d Cir. 2006); United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006); United States v. Scott, 424 F.3d 431, 435-36 (4th Cir. 2005); see also United States v. Johnson, 6 F.3d 829, *2 (D.C.Cir.1993) (unpublished). But see United States v. Littlejohn, 489 F.3d 1335, 1388 (D.C. Cir. 2007) (“To establish constructive possession, the government must show that the defendant knew of, and was in a position to exercise dominion and control over, the contraband.” (quotation omitted)).
Having decided that constructive possession requires intent to exercise control, we must consider whether the district court’s jury instruction constitutes reversible error. The government contends that there was no error because a different instruction defined the word “knowingly” as “voluntarily and intentionally.” Thus, the government suggests, the district court instruction that constructive possession required knowledge and control effectively *1183 required intent. But reading these instructions together, the jury was informed that constructive possession requires that a defendant voluntarily and intentionally have the power to exercise dominion or control over an object. Intentionally having the power to exercise dominion is not the same as intending to exercise dominion. For example, a felon who knows his neighbor keeps a gun in his bedroom and who is given a key to watch his neighbor’s house would intentionally have the power to exercise control over the weapon, but would not be guilty of constructive possession without the intent to actually exercise control. See Benjamin C. McMurray, Hands Off the Gun! A Critique of United States v. Jameson and Constructive Possession Law in the Tenth Circuit, 85 Denv. U. L. Rev. 531, 561 (2008) (listing hypotheticals). We thus conclude that the “voluntarily and intentionally” instruction does not remedy the deficiency.
However, “[e]ven when the district court fails to include an element of the crime in the instruction (including a mens rea element), we still apply the harmless error rule, asking whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” United States v. Sorensen, 801 F.3d 1217, 1229 (10th Cir. 2015). We hold that the district court’s error was harmless because a reasonable jury would be compelled to conclude that Little intended to exercise control over the weapons. The government submitted substantial evidence demonstrating that Little had exclusive control over the well house, including his placement of a lock on the door around the time the firearms were stolen. And when Blythe reported to Little that police seized two guns, he responded “[t]hey only found two?” Little argues that Blythe was an unreliable witness, but even setting her testimony aside, there is no dispute that Little spent at least seven and a half minutes in the six-by-eight foot well house when officers arrived on the day of the search. Law enforcement found plainly visible ammunition in the well house and weapons on and under Little’s bed, which spanned nearly the entire length of the house and was the only place to sit. Given his exclusive control of the tiny well house, and the seven and a half minutes he indisputably spent in it, it would be unreasonable to conclude that Little did not know about the presence of the weapons. See United States v. Hishaw, 235 F.3d 565, 571 (10th Cir. 2000) (“In most cases, the defendant’s dominion, control, and knowledge may be inferred if he has exclusive possession of the premises on which the object was found.”). The same is true as to Little’s intent to exercise command over their location. See United States v. Griffin, 684 F.3d 691, 695 (3d Cir. 2012) (“Exclusive control over the premises allows the jury to infer the knowledge and intent to control objects within those premises.... ”); United States v. Alanis, 265 F.3d 576, 592 (7th Cir. 2001) (“When a gun is found in a defendant’s bedroom ... it would not be improper for the jury to infer that the defendant had both knowledge of the firearm and an intent to exercise dominion and control over it merely from its presence in the bedroom.... ” (quotation and alteration omitted)).
We acknowledge that the foregoing cases stand for the proposition that a jury may infer constructive possession under such circumstances, not that a jury must make that inference. But given the particular facts of this case, we conclude there is no reasonable possibility that the jury would have found that Little had knowledge of the weapons at issue but lacked intent to exercise control over them.[4] We *1184 thus hold that the constructive possession instruction constituted harmless error.
B
Little challenges the district court’s instruction on aiding and abetting. He argues that inclusion of the instruction was inconsistent with the government’s theory that Little was the principal. He further argues that there was insufficient evidence to support the instruction.
We have repeatedly held that a district court may provide an aiding and abetting instruction even if the government argues a defendant is guilty as a principal. See United States v. Cooper, 375 F.3d 1041, 1050-51 (10th Cir. 2004); United States v. Cueto, 628 F.2d 1273, 1275-76 (10th Cir. 1980). So long as there is record evidence from which the jury could find that the defendant “was either a principal, or an aider and abettor,” the government may submit both theories to the jury. Cooper, 375 F.3d at 1049 (quotation omitted).
We thus turn to Little’s sufficiency argument. Generally, a conviction for aiding and abetting requires that the defendant: “(1) willfully associate^] himself with the criminal venture, and (2) seek[s] to make the venture succeed through some action of his own.” United States v. Bowen, 527 F.3d 1065, 1078 (10th Cir. 2008). Little suggests that a conviction for aiding and abetting a § 922(g) offense requires evidence that another specific felon possessed the weapons and that the aider and abettor knew or had cause to know of this other person’s status as a felon.[5]
Even assuming Little is correct regarding the evidence necessary to support an aiding and abetting instruction,[6] we conclude the government met its burden. Little argued that other individuals may have possessed the stolen firearms and ammuni *1185 tion — in particular, Blythe. During cross-examination, Blythe admitted she was a felon. She also testified that she and Little had known each other since they were children. The jury could infer that if Blythe possessed the weapons, Little intentionally sought to make that possession succeed by allowing her to keep the weapons in the well house over which he had exclusive control, and that Little knew of Blythe’s status as a felon. We accordingly conclude that there existed sufficient evidence to support the aiding and abetting instruction.
C
Little challenges the “deliberate ignorance” instruction for insufficient evidence. The jury was informed it could infer knowledge if Little “was aware of a high probability of the existence of the charged firearms or ammunition where he was living, unless the defendant did not actually believe the charged firearms or ammunition were present where he was living.”
“[A] deliberate ignorance instruction is proper only when evidence has been presented showing the defendant purposely contrived to avoid learning the truth.” United States v. Bornfield, 145 F.3d 1123, 1129 (10th Cir. 1998) (quotation omitted). In making this determination, we view the evidence in the light most favorable to the government. Id. The instruction “alerts the jury that [an] act of avoidance ... motivated by sufficient guilty knowledge [may] satisfy the knowing element of the crime.” Id. (quotation and alteration omitted). However, the risk of providing this instruction when there is “evidence of direct knowledge but no evidence of avoidance of knowledge is that the jury could still convict a defendant who merely should have known about the criminal venture.” United States v. Manriquez Arbizo, 833 F.2d 244, 249 (10th Cir. 1987).
The government argues evidence that Little should have known about the firearms is sufficient to show that he deliberately avoided knowledge. And the district court overruled Little’s objection to this instruction based on the substantial evidence suggesting he knew or should have known that the firearms were in the well house. But Manriquez Arbizo rejected this rationale. Id. at 248-49 (“[I]f the evidence against the defendant points solely to direct knowledge of the criminal venture, it would be error to give the instruction.”). Allowing a deliberate ignorance instruction premised on evidence of constructive knowledge reduces the standard for conviction from knowledge to recklessness or negligence. See United States v. Hilliard, 31 F.3d 1509, 1516 (10th Cir. 1994) (deliberate ignorance instruction is improper when rationale for instruction is “too close to premising criminal liability upon a reckless disregard for the truth or a negligent failure to inquire”). We are not directed to any evidence in the record suggesting that Little deliberately avoided knowledge of the firearms, and thus agree that the instruction was improper.
Nevertheless, we conclude that the instruction was harmless. When overwhelming evidence supports a finding of actual knowledge, “the tendering of a “wiUful blindness’ instruction is harmless beyond a reasonable doubt even when the government does not introduce evidence to support such a theory.” United States v. Sasser, 974 F.2d 1544, 1553 (10th Cir. 1992). As discussed in Section II.A, supra, the evidence showing Little had actual knowledge of the weapons was substantial. Because we are convinced beyond a reasonable doubt that the deliberate ignorance instruction played no part in the jury’s verdict, we hold that the instruction was harmless.
*1186 D
Little argues that the district court erred in giving a “possible guilt of others” instruction. The court provided the Tenth Circuit Criminal Pattern Jury Instruction § 1.19 (2011), explaining that “[t]he fact that another person also may be guilty is no defense to a criminal charge” and that “[t]he question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged.”
Little argues that the use notes to the pattern instruction suggest it should be used only if a defendant requests an instruction that a person other than the defendant could be guilty of the offense. Little did not request such an instruction. But the use notes do not state that a guilt of others instruction is appropriate only in response to a defendant’s request. See Tenth Circuit Criminal Pattern Jury Instruction § 1.19, use note (2011). At trial, Little argued that someone else was involved in storing the firearms on Blythe’s property. The district court- properly instructed the jury that involvement by third parties would not constitute an absolute defense. Moreover, Little’s suggestion that this instruction amounted to directing the jury to ignore the defense’s argument that someone else committed the crime is foreclosed by precedent. See United States v. Oberle, 136 F.3d 1414, 1423 (10th Cir. 1998).[7]
III
The district court determined that Little’s total offense level was 28, due in part to two prior convictions for crimes of violence. See U.S.S.G. § 4B1.2(a) (defining “crime of violence”). Little had multiple prior convictions for “battery upon a peace officer” in New Mexico. For a conviction under this charge, battery must result in actual injury to the officer, represent a threat to the officer’s safety, or present a meaningful challenge to the officer’s authority. State v. Padilla, 123 N.M. 216, 937 P.2d 492, 493 (1997).
' The district court stated that a New Mexico conviction for battery upon a police officer meets the requirement for a crime of violence “in one of two ways.” First, the court suggested that such convictions qualify under U.S.S.G. § 4B1.2(a)(l) because the “actual injury” requirement means that the crime has as an element the use of force. “In parallel,” the court observed that the “ ‘actual threat to safety, or meaningful challenge to authority’ aligns with the Sentencing Guideline’s residual clause.” See U.S.S.G. § 4B1.2(a)(2) (defining “crime of violence” as including offenses that “otherwise involve[] conduct that presents a serious potential risk of physical injury to another”). Thus, the district court concluded, any conviction for the New Mexico offense would qualify as a crime of violence.
Following Little’s sentencing, we held that under Johnson v. United States, - U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d *1187 569 (2015), the Guidelines’ residual clause is unconstitutionally vague. United States v. Madrid, 805 F.3d 1204, 1210 (10th Cir. 2015). This holding applies to the matter before us, which was “pending on direct review” when Johnson and Madrid were decided. Griffith, 479 U.S. at 328, 107 S.Ct. 708. As the government concedes, reliance on the residual clause constitutes plain error. We thus remand for resentencing.
IY
For the foregoing reasons, Little’s convictions are AFFIRMED. We VACATE Little’s sentence and REMAND for resen-tencing.

. Little was convicted for possession of the items recovered from the well house, not the firearm recovered by Blythe after the initial search.

. Although Henderson was decided after Little’s sentencing, when the Supreme Court decides a new rule, "the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.” Griffith v. Kentucky, 479 U.S. 314, 323, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

. In United States v. Ibarra-Diaz, 805 F.3d 908 (10th Cir. 2015), an opinion issued after Henderson was decided, we stated in dicta that constructive possession requires that a "defendant knowingly has the power to exercise control or dominion over the item.” Ibarra-Diaz, 805 F.3d at 932 (quotation omitted). We did not consider Henderson's impact on our circuit precedent in Ibarra-Diaz.

. The dissent correctly observes that we generally undertake harmless error analysis sua sponte only if the harmlessness of the error is *1184 certain. See Mollett v. Mullin, 348 F.3d 902, 920 (10th Cir. 2003) (quotation omitted). The "certainty” burden is necessarily more stringent than the "reasonable doubt” test we would apply had the government thoroughly developed its harmlessness argument. See United States v. Serawop, 410 F.3d 656, 669 (10th Cir. 2005). But Little indisputably spent seven and a half minutes in the six-by-eight foot well house with plainly visible ammunition and two stolen firearms while police questioned his landlord and acquaintances outside his door. Contrary to the dissent, we are left with no doubt that Little intended to exercise control over the weapons.

. Little does not challenge the language of the instruction on appeal, and any such challenge is therefore waived. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.”). Similarly, Little argued to the district court that an aiding and abetting instruction should not be given because the evidence did not support such an instruction, but he did not object to the particular language of the instruction or proffer alternative language. See United States v. Zapata, 546 F.3d 1179, 1190 (10th Cir. 2008) ("[A] generalized objection to an instruction is insufficient to preserve a specific objection on appeal.”).

. The circuits are split as to whether a defendant charged with aiding and abetting a felon in possession must know the principal was a felon. Compare United States v. Xavier, 2 F.3d 1281, 1286 (3d Cir. 1993) ("[Tjhere can be no criminal liability for aiding and abetting a violation of § 922(g)(1) without knowledge or having cause to believe the possessor's status as a felon.”), and United States v. Gardner, 488 F.3d 700, 715 (6th Cir. 2007) ("[I]n order for aiding-and-abetting liability to attach under § 922(g), the government must show that the defendant knew or had cause to know that the principal was a convicted felon.”), with United States v. Canon, 993 F.2d 1439, 1442 (9th Cir. 1993) (government is not required to show defendant knew of principal's status as a felon). But see United States v. Graves, 143 F.3d 1185, 1188 (9th Cir. 1998) (questioning the Ninth Circuit's position, and suggesting that it would be "logical” to require that an aider abettor under § 922(g) have knowledge of the principal’s status).

. Little also contends that even if the four instructions discussed supra were not individually misleading, they were misleading as a whole because they would allow a guilty verdict even if someone else placed the firearms in Little’s home and Little had only constructive knowledge of the weapons or ammunition. We agree that the instructions erroneously failed to require intent to exercise control and that the deliberate ignorance instruction was not warranted. However, as noted supra, these errors were harmless given the overwhelming evidence that Little had actual knowledge and intent to exercise control over the firearms. For the same reason, we reject his challenge to the instructions as a whole.