PHILLIPS, Circuit Judge, dissenting. I agree with the majority’s analysis until it reaches the third prong of plain-error review in section IV.B. At that stage, I would conclude that Benford has failed to meet his burden to show a reasonable probability that the jury would have acquitted him, if properly instructed on constructive possession. Nothing undermines my confidence in the outcome. In resolving this issue, the first step should be to determine what it means for a person to intend to exercise control or dominion over a firearm.[1]1 see three ways for a person to have that intent. First, a person can intend to actually possess the firearm. Second, a person can intend to direct another person’s use of the firearm. See Henderson v. United States, — U.S. —, 135 S.Ct. 1780, 1784-85, 191 L.Ed.2d 874 (2015) (observing that 18 U.S.C. § 922(g) prevents a felon from actually possessing firearms, from maintaining control over those firearms in the hands of others, and from directing the use of the firearms after transferring them). And third, a person can intend to exercise command over the location of the firearm. United States v. Little, 829 F.3d 1177, 1182 (10th Cir. 2016) (noting that Henderson “observed that ‘the very hallmark of possession’ is that a defendant have ‘broad [ ] command over the gun’s location and use’ ” (alteration in original) (quoting Henderson, 135 S.Ct. at 1785 n.3)). Under each alternative way, I see a strong likelihood the jury would have found that Benford intended to exercise control over the Lorcin pistol. In analyzing the intent-to-control element, I rely primarily on the evidence supporting the jury’s finding that Benford knew about the pistol and had power to exercise control of it. I evaluate the evidence to see whether a jury might realistically believe that Ben-ford was merely cohabitating with a girlfriend who brought home a firearm in disregard of Benford’s desire never to be near another firearm. I consider whether Benford was merely a gun-leery felon tolerating the firearm’s presence while steering clear of it. Here, the evidence shows a strong unlikelihood that the jury would have believed that Benford fit that description.[2] The jury heard considerable evidence that bore on Benford’s intent to exercise control or dominion over firearms. It heard about his earlier felon-in-possession conviction for actually possessing a firearm.[3] It read his recent cell-phone texts' hinting that he had firearms to barter for a motor. And it heard evidence that he had ordered the same girlfriend to retrieve a different handgun from the same apartment just nineteen days before his arrest—to better threaten a family walking its dog. During this pistol-pointing encounter, Benford hit an intent-to-exercise-control triple—he handled a firearm; he directed his girlfriend to get the gun and carry it to him from the apartment; and he exercised command over the gun’s location, the apartment where he obviously had kept it for just such an occasion. Despite this potent evidence, the majority apparently feels that the jury might have believed that within three weeks of this gun-wielding behavior, Benford had reformed into a gentler soul, one no. longer intending to exercise control over a firearm, not even a pistol lying in an opened bag on his bedroom floor.[4] I disagree with how the majority applies Little, 829 F.3d 1177. That case is an important one because it involved the same constructive-possession instructional error as here. But Little came to us in a much different posture. Unlike Benford, Little objected to the district court’s failing.to instruct on intent to exercise control of the firearms. Id. at 1183. Thus, unlike here, the government bore the burden to prove that the resulting constitutional error (failure to instruct on an element of an offense) was harmless beyond a reasonable doubt. Id. And the government’s burden grew even more stringent after it failed to argue harmless error on appeal. To affirm, the court in Little had to find to a certainty that the error had been harmless, that is, that the error was harmless beyond any doubt. Id. n.4. And Little did just that, reasoning that the evidence would have compelled the jury to find that Little had intended to exercise control or dominion over the firearms. Id. The majority errs in , attributing this same burden to the government here. Though acknowledging that Benford has the burden to show plain error, the majority declares in the same sentence that “we are not left with the same certainty that a jury would be compelled to find Benford intended to exercise control over the Lorcin pistol.”[5] Maj. Op. at 1018. But the majority need not be convinced that the government would prevail under a harmless-beyond-cm?/-doubt standard to affirm Benford’s conviction, on the plain-error standard. Instead, the majority need be persuaded only that Benford has not met his burden to show a reasonable probability that the jury would have acquitted if properly instructed. In analyzing whether Benford has met his burden to show plain error, the majority then compares the facts in Little to those in Benford’s case. It finds that Little’s facts better show intent to exercise control of firearms, primarily relying on Little’s sole occupancy of the rented six-by-eight-foot well house where the firearms and ammunition, were found. It contrasts Little’s sole occupancy with Benford and his girlfriend’s joint occupancy of the apartment bedroom. From this joint occupancy, as I understand it, the majority concludes that Benford has shown a reasonable probability that the jury may have found that his girlfriend exclusively intended to control the firearm, not even jointly possessing it with Benford. If Benford and his girlfriend both intended to control the pistol, then I believe that the majority would have to affirm Benford’s conviction.[6] For the reasons given, I do not believe it at all likely that the jury would have found the girlfriend exclusively intended to exercise control 'over -the pistol. A cohabitant intending to exercise exclusive control, especially one who lives with a felon partial to using guns during sidewalk confrontations, would not- leave the pistol in plain view in the shared bédroom. And, as mentioned, 'Benford’s past actions showed the jury that he, not the girlfriend, was the household member who liked to control firearms. His bartering firearms and using a handgun to threaten a fataily walking its dog exceeds Little’s own actions. In short, the jury had no reason to believe that in nineteen days Benford had morphed from a violent, shrieking man into a shrinking-violet man. Nor did the jury have any reason to believe that Benford’s girlfriend had morphed from a submissive woman dutifully obeying Benford’s snapped orders get him the gun, into a dominant woman exclusively intending to exercise control of the Lorcin pistol. But that does not end our work. In a Rule 28© letter, Benford points us to United States v. Simpson, 845 F.3d 1039 (10th Cir. 2017). In Simpson, we faced another case where the district court had failed to instruct on the intent-to-exercise-control element of constructive possession. Id. at 1045, 1059-60. At the third prong of the plain-error analysis, the court in Simpson determined that the defendant had shown a reasonable probability that a properly instructed jury would have reached a different outcome. Id. at 1062. The court based this result on two findings: (1) “the jury could have concluded that Mr. Simpson had not handled the handguns on or about June 19, 2014,” and (2) this being so, “the jury could reasonably have concluded that Mr. Simpson had not intended to possess the handguns and ammunition on or about the applicable dates.” Id.[7] In its next sentence, the court declared that “[i]n these circumstances, the instructional error affected Mr. Simpson’s substantial rights....” Id. So Simpson says that a jury might well have believed that the defendant did not intend to exercise control of the firearms within the times charged in the indictment, unless the government offered evidence that he had actually possessed them (i.e., handled them) during that time. And because the government had shown only that the defendant had handled the firearms about two months before the arrest (when he was showing his wife how to shoot them), Simpson reversed those convictions. In Benford’s case, the government can’t show so much. Benford didn’t expressly admit ever handling the Lorcin pistol. Under Simpson, I can’t see how Benford would not prevail on plain-error’s prejudice prong.[8] It would not matter how much evidence the jury heard showing intent to exercise control of the pistol. In Little we affirmed a conviction beset with the same instructional error. And despite the government’s not having shown that the defendant actually possessed the firearms and ammunition during the time charged in the indictment, we affirmed Little’s conviction on constructive-possession grounds. See 829 F.3d at 1183. So I would apply Little, not Simpson. See United States v. Rosales-Miranda, 755 F.3d 1253, 1261 (10th Cir. 2014) (“It is axiomatic that ‘when faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom.’ ” (quoting Haynes v. Williams, 88 F.3d 898, 900 n.4 (10th Cir. 1996))). And based on my earlier expressed views on Little, I would conclude that Benford has not met his burden to show a reasonable probability of a different outcome had the jury received the proper instruction. For all reasons stated, I would affirm Benford’s conviction. . Iam uncertain what standard the majority opinion uses to measure this element. . In Little, the court gave a hypothetical to illustrate when a person with power to exercise control over a firearm would not have intent to do so. Under the court’s hypothetical, a neighbor gives a felon friend a house key to watch over the neighbor's home. 829 F.3d at 1183. Even though the felon knows that the neighbor has .a firearm in his jiouse, the Little court explained that the government would need to show more than that to prove an intent to exercise control over the firearm. Id. The.hypothetical differs greatly from Benford's situation. . Though I'm not sold on the reasoning of United States v. Moran, 503 F.3d 1135 (10th Cir. 2007), that the government may admit evidence of a felon’s relatively ancient felon-in-possession conviction under Fed. R. Evid. 404(b) to help show the defendant's knowledge of a different firearm years later, I accept that the precedent binds us. But I find it much easier to see the probative value of an earlier felon-in-possession conviction to show .that the felon intended to control a firearm in plain view on his shared bedroom floor, .The majority finds it importafit that the pistol is "little” and has pink grips. Maj. Op, at 1020, Whether the pistol matched- a macho-man profile, it remained effective as.a means by which to threaten or harm others. In searching the apartment, police did not find the handgun that Benford had used nineteen days, earlier, so we don’t know whether it more matched the majority’s view .of what a pistol Benford would intend to exercise control over should look like. The evidence showed that Benford liked having a firearm in the apartment and that on the date of arrest the Lorcin pistol was the sole firearm there, . Along the same line, the majority later says that "a properly instructed jury would not be compelled to also conclude Benford intended to exercise control over the firearm based on this evidence.” Maj. Op. at 1019. . The majority believes it important that the girlfriend's purse was found in plain view on top of the bed, apparently reasoning that if Benford had power to exercise control over it but no intent to do so, that somehow bears on whether he intended to exercise control over the Lorcin pistol. Maj. Op. af 1019. I don’t follow the majority's logic on this. Plainly, the purse belonged to the girlfriend, and she would be free to carry it lawfully in public and be expected to do so. . In my view, this analysis is mistaken. It ties actual possession (i.e., handling) of a firearm to constructive possession’s intent to exercise control of it (describing this as intent "to possess”). It fails to weigh the government’s evidence of intent to exercise control of the firearms in evaluating whether the defendant had met his burden to show a reasonable probability of a different outcome. It turns the proper analysis sideways, essentially requiring the government to show actual possession (handling) during the dates charged. Instead, the court should have required Simpson to show a reasonable probability of an acquittal on the intent-to-exercise-control element, fully considering the effect of his handling the firearms near the charged dates as well as having the firearms and ammunition strewn throughout his and his wife’s house. . In fact, in cases like Little, Simpson, and this one (those with a constructive-possession instruction not including intent to exercise control as an element), I can't see any case that wouldn’t meet the first three prongs of the plain-error analysis. After all, if the government had shown actual possession of the firearms, the jury would have convicted on that basis, and the constructive-possession issue would never have arisen, especially on appeal.