**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 9, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WESLEY TAVION GRANT, a/k/a
OLAJAWAN ARMOND BUSH,

    Defendant - Appellant.

No. 19-6140
(D.C. Nos. 5:18-CV-00889-D &
5:15-CR-00172-D-1)
(W.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **LUCERO**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Wesley Tavion Grant, a federal inmate appearing pro se,[1] seeks a certificate of

appealability (COA) to appeal the district court's denial of his 28 U.S.C. § 2255

habeas petition. We deny his request and dismiss this matter. We grant his motion to

proceed *in forma pauperis*.

---

[*] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We liberally construe the pleadings of pro se litigants. *Hall v. Bellmon*, 935
F.2d 1106, 1110 (10th Cir. 1991).

## BACKGROUND

On August 18, 2015, a federal grand jury indicted Grant on three counts:

(1) conspiracy to possess with intent to distribute phencyclidine (PCP), in violation

of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) (2012); (2) distributing PCP, in violation of

21 U.S.C. § 841(a)(1), (b)(1)(C), or, alternatively, aiding and abetting, in violation of

18 U.S.C. § 2; and (3) possessing with intent to distribute PCP, in violation of

§ 841(a)(1), (b)(1)(A), or, alternatively, aiding and abetting, in violation of 18 U.S.C.

§ 2. On January 22, 2016, a jury found Grant guilty on all charges. Because Grant had

two previous felony drug offenses, 21 U.S.C. § 802(a)(44), he was sentenced to

mandatory life imprisonment under §§ 841(a)(1), (b)(1)(A), 851.[2] Grant filed a direct

appeal of his convictions, arguing (1) insufficiency of the evidence for all three counts,

and (2) abuse of discretion in admitting evidence of his previous convictions and gang

affiliation. *United States v. Gabourel*, 692 F. App'x 529, 531–32 (10th Cir. 2017)

(unpublished).[3] We affirmed.

On September 5, 2018, Grant filed a § 2255 habeas petition, raising three grounds

for relief. *United States v. Grant*, No. CIV-18-889-D, 2019 WL 2476748, at *1 (W.D.

Okla. June 13, 2019). First, Grant alleged he had received ineffective assistance of

counsel for failure to object to an aiding-and-abetting jury instruction as lacking an

---

[2] After the passage of the First Step Act in 2018, the mandatory sentence would now be for a term of not less than twenty-five years' imprisonment instead of life imprisonment. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A) (2018).

[3] Grant was tried with co-defendant Larenzo Montel Gabourel. We consolidated their separate appeals. *See Gabourel*, 692 F. App'x at 532.

element required by *Rosemond v. United States*, 572 U.S. 65 (2014). *Id.* Second, Grant

alleged that he received ineffective assistance of counsel for failure to object to a

constructive-possession jury instruction as lacking an element required by *Henderson v.*

*United States*, 575 U.S. 622 (2015). *Id.* Third, Grant alleged he had received ineffective

assistance of counsel by his counsel's failure to "object to the District Court's failure to

inform [Grant] that any challenge to a prior conviction is waived if not made before

sentencing." *Id.* (internal quotation marks omitted). The district court concluded that

Grant had failed to establish ineffectiveness of counsel, denied Grant's § 2255 motion,

and denied Grant a COA. *Id.* at *5.

## DISCUSSION

### I. Jurisdiction

Initially, we must determine whether Grant's notice of appeal was timely. *See*

*Parker v. Bd. of Pub. Utils. of Kan. City*, 77 F.3d 1289, 1290 (10th Cir. 1996) ("The

filing of a timely notice of appeal is an absolute prerequisite to our jurisdiction."

(citation omitted)). Grant, as the party claiming appellate jurisdiction, bears the

burden of establishing this court's subject-matter jurisdiction. *See Montoya v. Chao*,

296 F.3d 952, 955 (10th Cir. 2002). When the United States is a party, a notice of

appeal must be filed within sixty days of the entry of judgment. *See* 28 U.S.C.

§ 2107(b); Fed. R. App. P. 4(a)(1)(B); *United States v. Pinto*, 1 F.3d 1069, 1070 (10th

Cir. 1993) (noting that the sixty-day, civil time limit applies to § 2255 proceedings).

On June 13, 2019, the district court entered final judgment denying Grant's § 2255

motion and denying Grant a COA. Grant's notice of appeal was due on August 12,

2019, but the district court granted Grant's motion for an extension of time, filed on August 15, 2019, because a prison lockdown had prevented him from accessing or preparing appeal papers. The district court extended the deadline for Grant's notice of appeal by thirty days and ordered Grant to file his notice of appeal by September 11, 2019. Grant filed his notice of appeal on September 13, 2019, at first glance two days late.[4]

But under our case law, Grant's motion for an extension of time qualifies as a notice of appeal. *See United States v. Smith*, 182 F.3d 733, 734–36 (10th Cir. 1999). In *Smith*, this court considered whether it had jurisdiction to hear a defendant's appeal even though his actual notice of appeal was filed almost a month after the deadline. *Id.* at 735. The court determined that it would have "jurisdiction to hear Smith's appeal if Smith's [motion for extension of time]—filed on March 27, 1998— is the functional equivalent of a notice of appeal." *Id.* (citing *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–17 (1988)). The court concluded that "whether a motion is the functional equivalent of a notice of appeal turns on the issue of notice." *Id.* The notice requirement is satisfied if Federal Rule of Appellate Procedure 3(c)'s three requirements are met. The notice of appeal must include: "the party or parties taking the appeal by naming each one in the caption or body of the notice; the

---

[4] We have no need to consider whether Grant could have succeeded under the prison-mailbox rule, *see* Fed. R. App. P. 4(c)(1), because we conclude that Grant's motion for an extension of time makes his appeal timely.

judgment, order[,] or part thereof appealed from; and the court to which the appeal is taken." *Id.* (quoting Fed. R. App. P. 3(c)(1) (internal quotation marks omitted)).

Grant's motion for an extension of time satisfies Rule 3(c)'s three requirements. First, in the caption, Grant identifies himself as the movant. Second, Grant advises that he is appealing the district court's order denying his § 2255 motion. Third, though Grant does not identify this court as the "court to which the appeal is taken," he still prevails. In *United States v. Treto-Haro*, 287 F.3d 1000 (10th Cir. 2002), we ruled that the third requirement is met when "the United States Court of Appeals for the Tenth Circuit is the only Court to which the [parties] may take this appeal." *Id.* at 1002 n.1 (seeking to avoid becoming a citadel of technicality, we approved our earlier reasoning that "a defective notice of appeal should not warrant dismissal for want of jurisdiction where the intention to appeal to a certain court of appeals may be reasonably inferred from the notice" (internal quotation marks and citations omitted)). Here, because Grant appeals an order of the Western District of Oklahoma, this court is the only one for his appeal. Under *Smith*'s and *Treto-Haro*'s liberal construction of Rule 3, Grant has satisfied Rule 3(c)'s three requirements. Treating Grant's motion for an extension of time—filed August 15, 2019—as the functional equivalent of a notice of appeal, we determine that Grant's motion was filed well before the September 11, 2019 deadline. Accordingly, we have jurisdiction to hear Grant's request for a COA.

## II. Grant's COA

Grant must obtain a COA before he can appeal the district court's final order. *See* 28 U.S.C. § 2253(c)(1)(B). And we will only issue a COA if Grant makes "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2); *see also United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012). To make this showing, Grant must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

Reading Grant's petition broadly, we understand him to present three ineffective-assistance-of-counsel grounds under *Strickland v. Washington*. *See* 466 U.S. 668 (1984). The three grounds are: (1) ineffective assistance of counsel for not ensuring that the district court advised Grant that any failure to object to his two previous felonies qualifying as "felony drug offenses" before sentencing would be lost to later attack, 21 U.S.C. § 851(b); (2) ineffective assistance of counsel for not objecting to the district court's jury instruction on aiding and abetting, which did not include as an element under *Rosemond* that Grant had advance knowledge of the PCP crime; and (3) ineffective assistance of counsel for not objecting to the district court's jury instruction on constructive possession, which did not include as an element under *Henderson* that Grant had the intent to possess the PCP.

To establish ineffective assistance of counsel, Grant must show both that his counsel's performance was constitutionally deficient and that the deficient

6

performance prejudiced him. *See Strickland*, 466 U.S. at 687. For each of Grant's three grounds, we will assume, without deciding, that reasonable jurists could debate whether his counsel's performance was deficient.[5] But we conclude that no reasonable jurist could reasonably debate that Grant was not prejudiced.

## A. The 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 851 Enhancement

Grant argues the district court erred by not informing him that he needed to object to the predicate felony offenses used by the government to enhance his conviction under 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 851. Because Grant does not challenge Count One of his conviction in his § 2255 motion, his mandatory-life sentence still stands so long as his two previous convictions qualify as "felony drug offenses" as defined by 21 U.S.C. § 802(44). And Grant does not challenge that either of the two predicate felony drug offenses do so qualify.

Instead Grant challenges his counsel's failure to ensure that the district court met its responsibility under § 851(b) to, before imposing sentence, ask of Grant "whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is

---

[5] Indeed, Grant can argue that his counsel afforded deficient performance on each of the three grounds. As noted, the jury convicted him on January 22, 2016. This court decided his appeal on June 7, 2017. And *Henderson* announced the new required element of *intent* to possess for constructive possession on May 18, 2015. *See Henderson v. United States*, 575 U.S. 622 (2015). Further, the Court in *Rosemond* announced its rule for advance knowledge (at least in "double-barreled" § 924(c) crimes) for aiding and abetting on March 5, 2014. *See Rosemond v. United States*, 572 U.S. 65 (2014). Finally, the notice requirements of 21 U.S.C. § 851 preceded Grant's prosecution by years.

not made before sentence is imposed may not thereafter be raised to attack the sentence." At trial, during the underlying prosecution, the district court admitted evidence of Grant's prior felony convictions. *See Gabourel*, 692 F. App'x at 545–46. Indeed, Grant testified that he had been convicted of two prior drug-trafficking charges, one in Oklahoma and one in Nevada. *Grant*, 2019 WL 2476748, at *4 n.8. And on appeal, we affirmed the district court's ruling admitting evidence of the prior felony convictions. *See Gabourel*, 692 F. App'x at 546–48.

Consistent with Grant's testimony, the record supports that he has two prior possession-with-intent-to-distribute felony convictions. On February 21, 2013, in Oklahoma City, Oklahoma, Grant pleaded guilty to possession of PCP with intent to distribute and possession of marijuana with intent to distribute. Grant received a seven-year suspended sentence. And on July 22, 2014, in Las Vegas, Nevada, Grant pleaded guilty to possession of cocaine with intent to distribute, receiving a sentence of twelve to thirty-four months of imprisonment, with ninety-four days of credit for time served.

Grant does not challenge that these two convictions qualify as felony drug offenses for sentencing purposes. *See* 21 U.S.C. §§ 802(44), 841(a), (b)(1)(A), 851. Accordingly, we fail to see how Grant was prejudiced by his counsel's failure to object to the district court's failure to notify him of a need to challenge his prior convictions. *See* § 851(b), (c)(1). No reasonable jurist could debate the district court's conclusion that Grant failed to establish prejudice and we deny his request for a COA on this ground.

## B.     The *Rosemond v. United States* **Jury Instruction**

For Count Two, the jury convicted Grant of distributing the PCP, or, alternatively, aiding and abetting the distribution. The government has conceded that Grant did not actually distribute the PCP. *Gabourel*, 692 F. App'x at 543. But in resolving Grant's direct appeal, this court ruled that Grant's conviction under this count would suffice using coconspirator liability under *Pinkerton v. United States*, 328 U.S. 640, 645–46 (1946). *Id.* at 543–44 (concluding that there was sufficient evidence to convict Grant under *Pinkerton* coconspirator liability). And we also concluded that the government had proved the aiding-and-abetting alternative with sufficient evidence. *Id.* at 544 ("In addition, Mr. Grant's conviction can be sustained under an aiding and abetting theory of liability."). And even if *Rosemond* applies beyond its "double-barreled" § 924(c) offense to "single-barreled" drug-distribution offenses, *United States v. Arciniega-Zetin*, 755 F. App'x 835, 844, 845 n.8 (10th Cir. 2019) (unpublished), this would require the government to prove only one additional element—that Grant had advance knowledge of the drug distribution. *See id.* (stating that even though this circuit has not extended *Rosemond* beyond § 924(c) crimes, the defendant "needed to know before the heroin sale was completed that he was aiding and abetting the offense"). For that, the government offered overwhelming evidence.

In May 2015, Grant invited three men (Norman, Thomas, and Gabourel) from Los Angeles, California, to Oklahoma City, Oklahoma, where they spent some time "getting high on PCP, Oxycontin, and Xanax at a 'stash house.'" *Gabourel*, 692 F. App'x at 532. On May 17, 2015, Grant observed his codefendant, Gabourel, mixing

9

PCP with "starter fluid or something." *Id.* Grant and Thomas then "smoked some of this PCP," and after acknowledging the PCP was "garbage," Thomas stated he "knew somebody who would likely buy it anyway." *Id.* (internal quotation marks and citation omitted). Grant "acknowledge[d] he saw the PCP in the apartment and knew the others were planning to distribute it." *Id.* at 542. Grant was also present when Thomas received a call from his buyer (who turned out to be a confidential informant) and set up the drug deal to "exchange two ounces of PCP for $450." *Id.* at 532. After this phone call, Grant rode with Thomas and Norman to "Walmart to sell the PCP" to the buyer. *Id.* at 532–33. Grant chose to remain in the car while Thomas sold the PCP to an undercover police officer. *Id.* at 533. After Grant was arrested, police officers noticed that Grant smelled strongly of PCP. As Grant was being transferred to jail, a vanilla-extract bottle containing PCP fell out of his shorts. This bottle of PCP was like the two bottles sold to the undercover police officer. In fact, all three bottles matched the three empty vanilla-extract boxes found in the stash house trash. In view of this evidence showing Grant's knowledge of the drug distribution, we deny a COA on this issue.

## C.     The *Henderson v. United States* Jury Instruction

Grant was also convicted on Count Three of the indictment, possession of PCP with intent to distribute, or aiding and abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), 18 U.S.C. § 2. Under this count, Grant was charged with possessing with the intent to distribute about 2,552 grams of PCP (part of about a gallon of liquid PCP the police found in the kitchen of the stash house). *Gabourel*, 692 F. App'x at

533. For his third claim for ineffective assistance of counsel, Grant alleges his counsel rendered deficient performance by failing to object to the jury instruction for "constructive possession" under *Henderson*, 575 U.S. 622. In *Henderson*, the Court "change[d] the law of constructive possession in our circuit . . . [to require] both power to control an object and intent to exercise that control." *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016). But Grant's "constructive possession" jury instruction did not require a finding of intent to exercise control. *See Gabourel*, 692 F. App'x at 545 n.10. Here, we must again determine whether Grant has shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

We again briefly turn to the evidence presented at trial. In May 2015, Grant invited his friends Thomas and Norman (who in turn invited Gabourel) to visit him in Oklahoma. *Gabourel*, 692 F. App'x at 532. When the men arrived in Oklahoma, Grant spent his time with them smoking PCP in the stash house, including smoking the product after Gabourel cut in the lighter fluid to sell the PCP. *Id.* As discussed above, Grant was aware of and present during the drug exchange with the uncover police officer. When the police raided the stash house, they found 2,522 grams of a mixture or substance containing a detectable amount of PCP. Inside this apartment, in the bedroom, the police found Grant's birth certificate, his social security card, and court documents with Grant's alias on them. Other evidence further supported Grant's intent to possess the PCP located at the stash house. For instance, at arrest he had hidden under his shorts "a vanilla extract bottle containing one ounce of

PCP . . . [that] matched the two bottles sold to the informant and Mr. Grant admit[ted] it came from the stash at the apartment." *Gabourel*, 692 F. App'x at 544. Though Grant claimed that this bottle of PCP was for his personal use, the three men driving together to the drug deal sold two bottles of PCP just like the one Grant had hidden. "A police officer also testified that the amount of PCP contained in the bottle found in Mr. Grant's physical possession was a distribution quantity." *Id.* So, a reasonable jury could find Grant intended to control the PCP found in the stash house. We conclude that no reasonable jurists could debate that Grant was not prejudiced and deny a COA on this ground.

## CONCLUSION

For the reasons stated, we deny Grant's request for a COA. Grant's motion to proceed *in forma pauperis* is granted.

Entered for the Court


Gregory A. Phillips
Circuit Judge